Rolf SLETTEN, Executive Director of the North Dakota Board of Medical Examiners, and the North Dakota Board of Medical Examiners, Complainants and Appellees,

v.

Brian E. BRIGGS, M.D., Respondent and Appellant.

Civ. No. 890084.

Supreme Court of North Dakota.

Nov. 27, 1989.

R.W. Wheeler, Sp. Asst. Atty. Gen., North Dakota Bd. of Medical Examiners, Bismarck, for complainants and appellees.

Calvin N. Rolfson of Bucklin Trial Lawyers, P.C., Bismarck, and Gregory D. Seeley of Seeley, Savidge & Aussum, Cleveland, Ohio, for respondent and appellant.

VANDE WALLE, Justice.

Brian E. Briggs, M.D., has appealed from a district court judgment affirming an order of the North Dakota Board of Medical Examiners (the Board) suspending his license to practice medicine for a period of one year. We affirm.

In 1983, the Minnesota Board of Medical Examiners revoked Dr. Briggs's license to practice medicine in Minnesota. Among its many findings and conclusions, the Minne-

sota Board made the following finding of fact:

"11. Dr. Briggs prescribed chelation therapy for patients who had arthosclerosis, heavy metal poisoning, and some stroke victims. The therapy consists of an intravenous infusion of three grams of a chemical called EDTA three times a week.... The potential problems associated with this procedure include renal failure and electrolyte imbalance.... EDTA has not been shown to be effective in the treatment of arthosclerosis or heart disease.... The use of chelation therapy for anything other than heavy metal poisoning is inconsistent with prevailing medical practice in Minnesota."

The Minnesota Board concluded:

"5. That the Respondent has violated Minn.Stat. § 147.021, subd. 1(K), which prohibits unprofessional conduct including any departure from or the failure to conform to the minimal standards of acceptable and prevailing medical practice, by virtue of his prescription of unapproved, ineffective and unsafe drugs, chemicals and supplements, his use of diagnostic tests which are not scientifically valid, his use of therapy, procedures and techniques which have no demonstrated effectiveness in the treatment of disease and which create a risk of harm for patients, and his use of, and failure to supervise, personnel lacking proper training."

Upon revocation of Dr. Briggs's license to practice medicine in Minnesota, the Board investigated Dr. Briggs's North Dakota practice. That investigation resulted in Dr. Briggs's execution of a settlement stipulation on July 20, 1984, by which he stipulated:

"3. The respondent ... will not initiate the use of any diagnostic or treatment methodology found by the Minnesota Board of Medical Examiners to be outside of the range of reasonably acceptable medical practice in the State of Minnesota as reflected in its Order on file herein (copy attached).

\*　　\*　　\*　　\*　　\*　　\*

"5. The violation of any of the terms of this stipulation by the respondent shall be *ipso facto* grounds for the revocation of his license to practice medicine in the State of North Dakota...."

In 1988, Rolf Sletten, Executive Director of the Board, alleged that Dr. Briggs "used chelation therapy with ethylenediamine tetracetate (EDTA) to treat patients with general arteriosclerosis, atherosclerosis, cardiac arrhythmia, or hypertension, or combinations of these diseases," and requested that the Board revoke Dr. Briggs's license to practice medicine in North Dakota. In his answer, Dr. Briggs admitted the allegation. The parties stipulated to waive their rights to a hearing and to submit briefs and exhibits to the Board, which, the parties stipulated, "shall make its decision in this matter based upon the written briefs in the same manner as if an actual hearing on the merits took place."

In its findings of fact, the Board recited the 1984 settlement stipulation provisions quoted above and the Minnesota Board's finding quoted above, and found that Dr. Briggs used chelation therapy with EDTA as alleged in the complaint. The Board concluded that "[t]he initiation of chelation therapy by the respondent with patients during the years 1985, 1986, and 1987, was in direct violation of the terms of the stipulation entered by him with this Board in July, 1984." The Board suspended Dr. Briggs's license to practice medicine for a period of one year. On appeal, the district court affirmed the Board's decision. On further appeal, Dr. Briggs has advanced a number of arguments asserting that the Board erred:

"A. The United States Food and Drug Administration does not approve or disapprove the uses of drugs and any reliance upon such by the North Dakota Board of Medical Examiners is unwarranted;

"B. The Board's sanction of Dr. Briggs is based on an invalid stipulation;

"C. Dr. Briggs was denied constitutionally and statutorily protected rights of substantive and procedural due process;

"D. The Board's findings of fact, conclusions of law and order are contrary to law;

"E. The Board's sanction upon Dr. Briggs unconstitutionally interferes with his property right to pursue his profession."

To begin our analysis, we note that the North Dakota Legislature has enacted Chapter 43-17, N.D.C.C., for the purpose of licensing physicians and surgeons. The Legislature has established the Board and empowered it to issue licenses to practice medicine and to revoke or suspend those licenses for the various reasons set forth in Section 43-17-31, N.D.C.C. Subsection 9 of that section provides that disciplinary action may be imposed against a physician for the violation of any provision of a medical practice act or the rules and regulations of the Board or "any action, *stipulation, condition, or agreement* imposed by the board." (Emphasis supplied.) Section 43-17-30.1, N.D.C.C., authorizes the Board to, among other disciplinary sanctions, suspend a physician's license if the Board finds it appropriate.

By definition the Board is an administrative agency. Section 28-32-01(1), N.D.C.C. On appeal we review the Board's decision rather than the district court's and, like the district court, we apply the standards of review for a decision of an administrative agency as set forth in Section 28-32-19, N.D.C.C. *See Wisdom v. State, N.D. Real Estate Comm'n,* 403 N.W.2d 19 (N.D. 1987); *N.D. Real Estate Comm'n v. Allen,* 271 N.W.2d 593 (N.D.1978).

We consider the issues raised by Dr. Briggs in the order set forth above.

**A**

We agree with the observation of counsel for the Board: "A review of the order of the Board ... shows no reliance of any kind upon any action of the Food and Drug Administration."

**B**

Dr. Briggs contends that there is no rule or law prohibiting the use of chelation therapy for conditions other than heavy metal toxicity; that courts are not bound by parties' erroneous stipulations; that "[s]ince there is no valid rule or law prohibiting the use of EDTA in Minnesota, the Board's attempt to bootstrap this rule into the North Dakota Stipulation is invalid and thereby erroneous," and that a court has "the duty to relieve a party from a stipulation when necessary to avoid manifest injustice."

We do not determine the efficacy of chelation therapy, which is, according to the evidence, at best controversial. As we have noted, the Legislature has authorized the Board to license physicians, to enter into stipulations and agreements with licensees and to impose disciplinary action for the violation of those stipulations and agreements. The policy or the wisdom of a statute is for the Legislature to determine, not the courts. *State v. Miller,* 59 N.D. 286, 229 N.W. 569 (1930). Dr. Briggs's 1984 settlement stipulation ended an investigation of his North Dakota medical practice resulting from the revocation of his license to practice medicine in Minnesota. In that stipulation, Dr. Briggs agreed to not use any "treatment methodology found by the Minnesota Board of Medical Examiners to be outside of the range of reasonably acceptable medical practice in the State of Minnesota." Fairly construed, the Minnesota Board's Finding 11 and Conclusion 5 constitute a finding that use of EDTA chelation therapy for conditions other than heavy metal poisoning is "outside of the range of reasonably acceptable medical practice in the State of Minnesota." Whether or not there is a "rule or law prohibiting the use of EDTA in Minnesota" is irrelevant. By his stipulation, Dr. Briggs agreed to not use EDTA chelation therapy for any condition other than heavy metal poisoning in exchange for the Board's conclusion of its investigation of his North Dakota medical practice. There is no contention or evidence in the record that Dr. Briggs was misled or did not enter into the stipulation knowingly and willingly. We do not believe that enforcement of Dr. Briggs's stipulation works manifest injustice.

### C

Dr. Briggs has alleged a large number of errors that he asserts denied him constitutionally and statutorily protected rights of substantive and procedural due process, including failure to take and record roll call votes; failure to adopt or approve minutes of its meeting; execution of the Board's findings, conclusions, and order by only the Board's Chairman and its Executive Secretary; no evidence that a quorum was present when the Board deliberated Dr. Briggs's case; failure to record the proceedings; considering information outside the record and beyond the parties' stipulation; improper service of the Board's decision; and that bias on the part of the Board's Chairman denied him an impartial hearing. We find the arguments to be without merit.

It is apparent that some of the procedures employed by the Board do not constitute models for imitation. Even if we were to conclude that the procedures employed were unlawful, however, which we deem it unnecessary to decide, we would not adopt reversal of the suspension of Dr. Briggs's license as a remedy. *See Matter of Annexation of Part of Donnybrook Pub. Sch. Dist. No. 24*, 365 N.W.2d 514 (N.D.1985) [declining to adopt invalidation of annexation proceedings as a remedy for failure to conduct and record roll call votes].

Dr. Briggs has alleged that the Board's Chairman made a statement indicating that "[t]he Board Chairman was biased, thereby denying him an impartial tribunal and therefore a fair hearing." "The Due Process Clause entitles a litigant to an impartial, neutral, and disinterested tribunal in both civil and criminal cases." *State v. Anderson*, 427 N.W.2d 316, 320 (N.D.), *cert. denied*, —— U.S. ——, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988). See also, *State v. Brewer*, 444 N.W.2d 923 (N.D.1989). Judicial review is the ultimate due process protection accorded persons aggrieved by the decisions of administrative agencies. *First American Bank & Trust Co. v. Ellwein*, 221 N.W.2d 509 (N.D.), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301

(1974). The facts leading to the Board's conclusion that Dr. Briggs violated his 1984 stipulation are not in dispute. While we may infer from the Chairman's statement that, after considering all of the evidence, briefs, and arguments of counsel, he believed that Dr. Briggs's conduct merited the imposition of disciplinary measures, we are unable to conclude that Dr. Briggs was denied a fair hearing before an impartial tribunal.

### D

Dr. Briggs contends that the Board's findings of fact, conclusions of law, and order are contrary to law.

"Ordinarily, determinations of an administrative body are presumed to be correct and valid." *Barnes County v. Garrison Diversion Conservancy Dist.*, 312 N.W.2d 20, 25 (N.D.1981). The courts are "required to affirm an administrative agency decision unless one of the six items listed in § 28–32–19, N.D.C.C., is present." *Matter of Annexation of Part of Donnybrook Pub. Sch. Dist. No. 24, supra*, 365 N.W.2d at 519. There are three questions involved in reviewing the factual basis of an administrative agency decision: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law? *Matter of Prettyman*, 410 N.W.2d 533 (N.D.1987). "In construing the 'preponderance of the evidence' standard ... [w]e determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

Dr. Briggs contends that the facts arrived at by the Board were vague, not supported by the probative evidence, unlawfully based upon improper evidence, and were not arrived at or approved by the Board. The Board: (1) found that Dr. Briggs was licensed to practice medicine in North Dakota; (2) quoted provisions of Dr. Briggs's 1984 stipulation; (3) quoted Find-

ing 11 of the Minnesota Board; and (4) found that in 1985, 1986, and 1987, Dr. Briggs "used chelation therapy with ethylenediamine tetracetate (EDTA) to treat patients with general arteriosclerosis, atherosclerosis, cardiac arrhythmia, or hypertension, or combinations of these diseases," which Dr. Briggs admitted in his answer to the complaint. The findings are supported by a preponderance of the evidence.

Dr. Briggs contends that the Board's conclusions are not supported by the findings, arguing: "The Board, in relevant part, *only* concludes that the use of chelation therapy violated Dr. Briggs's 1984 Stipulation with the Board, but it fails to conclude that such conduct is professionally or legally improper." (Emphasis in original.)

The Board concluded:

"2. The initiation of chelation therapy by the respondent with patients during the years 1985, 1986, and 1987, was in direct violation of the terms of the stipulation entered by him with this Board in July, 1984, ..."

To end the Board's 1984 investigation of his North Dakota medical practice, Dr. Briggs agreed to the imposition of conditions upon his practice and stipulated, (1) that he would not use EDTA chelation therapy for any condition other than heavy metal poisoning, and (2) that violation of the stipulation was ground for revocation of his license to practice medicine in North Dakota. The Board's conclusions are sustained by its findings and, under the terms of the 1984 stipulation, the Board was not required to make any additional conclusions. We further conclude that the Board's decision to suspend Dr. Briggs's license to practice medicine for one year is supported by its conclusions.

E

Dr. Briggs contends that the Board's sanction unconstitutionally interferes with his property right to pursue his profession. Dr. Briggs has not shown that he has a property right to use a kind of therapy that he stipulated to not use in order to conclude an investigation of his North Dakota medical practice initiated as a result of the revocation of his license to practice medicine in Minnesota. Dr. Briggs has not "advanced either persuasive authority or reasoning" in support of his contention. *Wisdom, supra,* at 22. Generally, if authorized by law and if justified in fact, imposition of a regulatory sanction by an administrative agency is a discretionary exercise of power. *Id.* Here the sanction imposed by the Board is authorized by law and justified in fact.

The judgment of the district court affirming the order of the Board is affirmed.

ERICKSTAD, C.J., GIERKE and LEVINE, JJ., and JOHN O. GARAAS, Surrogate Justice, concur.

JOHN O. GARAAS, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.