**MUNICIPAL SERVICES CORPORATION,**
Appellee,

v.

**The STATE of North Dakota, acting By and Through the NORTH DAKOTA DEPARTMENT OF HEALTH AND CONSOLIDATED LABORATORIES,**
Appellant.

Civ. No. 910208.

Supreme Court of North Dakota.

March 31, 1992.

Raymond T. Reott (argued) of Jenner & Block, Chicago, Ill., Kelsch, Kelsch, Ruff & Austin, Mandan, and Pringle & Herigstad, P.C., Minot, for appellee. Appearances by Gretchen M. Livingston, Thomas F. Kelsch, and David J. Hogue.

Nicholas J. Spaeth (argued), Atty. Gen., William J. Delmore and Gregory B. Gullickson, Asst. Attys. Gen., Atty. General's Office, Bismarck, for appellant. Appearances by William J. Delmore and Gregory B. Gullickson.

LEVINE, Justice.

The State appeals from a district court judgment vacating the North Dakota Department of Health and Consolidated Laboratories' [Department] order denying Mu-

nicipal Services Corporation's [MSC] application to modify its Sawyer facility permit to allow it to dispose of municipal waste combuster ash. We conclude that the Department's procedure did not afford MSC a fair hearing and we, therefore, affirm the judgment as hereafter modified.

MSC owns a landfill site in Ward County for·disposal of nonhazardous industrial solid waste. MSC petitioned the Department for modification of its landfill permit to include changes in the construction, operation, closure and postclosure maintenance of the site, and for permission to dispose of municipal waste combuster (incinerator) ash in the modified landfill.

The Department maintained a public comment period on the application from November 3 through December 10, 1990. The Department held a public hearing on the application in Sawyer on November 28 and 29, 1990. Dr. Robert M. Wentz, State Health Officer, presided as the Department's hearing officer. Approximately 85 witnesses testified and approximately 270 exhibits were received in evidence. On December 20, 1990, Dr. Wentz issued findings of fact, conclusions of law and an order denying MSC's application for modification of its permit.

MSC petitioned for rehearing and also petitioned to disqualify Dr. Wentz as the hearing officer, based upon a November 19, 1990, letter from Dr. Wentz to Governor George A. Sinner. The Department denied MSC's petitions and MSC appealed to the district court.

On appeal, the district court ordered that the Department's decision be vacated, stating:

"8. All things considered, in reviewing this record on appeal I discern:

— Intolerably high probability of bias by the adjudicator.

— Clear appearance of prejudgment before the Hearing.

— Failure to perform in a way that would lend credibility to the ultimate decision or that might earn deference to it.

"In sum, the November 19 letter speaks for itself as does resulting conduct.

"9. On remand the agency may proceed under its normal flexible and discretionary rules and regulations to the end that it Affirm or Reverse or Amend or otherwise Modify the Opinion dated 20 December."

Judgment was entered accordingly and the Department appealed.

■ MSC moved to dismiss the appeal for lack of appellate jurisdiction. The Department appealed pursuant to § 28–32–21, N.D.C.C., which allows an administrative agency to appeal from the final judgment of the district court. MSC contends that "[t]here can be no dispute that the district court's order is not a final judgment" and argues that "[a]n order that merely vacates a prior decision leaves the action pending below." We disagree. The district court did not retain jurisdiction and remand a matter to the administrative agency for the receipt and consideration of additional evidence under § 28–32–18, N.D.C.C., before deciding the appeal. Here, the district court decided the appeal, vacated the Department's decision, and remanded the matter to the Department to affirm, reverse, amend or modify its decision. The district court had nothing more to do in the case. A judgment was entered and it was final and appealable under § 28–32–21, N.D.C.C. To adopt MSC's argument would render many district court decisions on legal questions "effectively unreviewable" [*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 358 (1978)].

■ On appeal, the Department asserts that Dr. Wentz's letter to Governor Sinner did not constitute legal bias. In his November 19, 1990, letter to Governor Sinner, Dr. Wentz stated:

"While I am still in the process of reviewing information particularly in terms of risk assessment methods and data, I feel I must let you know that in my opinion the potential health and environmental risks of the proposed landfill outweigh any potential benefits to North

Dakota. I am firmly opposed to permitting the landfill and, in fact, my preference would be to approach the public hearing with an announced intent to deny the permit.

"My primary areas of concern are as follows:

"1. While there is debate regarding appropriate extraction and analytical procedures for municipal solid waste ash, it is clear that this ash does contain what I consider to be substantial amounts of heavy metals including lead, mercury and cadmium.

"2. If one just focuses on the issue of lead in the ash, the health risks, in my opinion, are substantial. Lead is highly toxic to humans. ... Lead is so highly toxic that no threshold level is believed to exist for toxic effects, especially in children.

"3. There is some continuing uncertainty and disagreement regarding the hydrogeologic appropriateness of the proposed site.

"4. While Municipal Services Corporation has indicated a willingness to incorporate 'state-of-the-art' technology ... I believe there is reasonable concern regarding the long term adequacy of this technology. Given the toxicity of some of the constituents of the ash, I believe we have to think in terms of 'geologic time' in addressing the issue of protection of public health and the environment....

"I recognize that my position on this issue differs from that of many of the staff within our Environmental Health Section who have been involved in reviewing the permit application.... As the one who will ultimately be held responsible for the decision of whether or not the proposed landfill poses a threat to human health or the environment, I must conclude that there is a threat which in my opinion is of sufficient magnitude to justify denial of the permit application."

In *Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 723 (1975), the United States Supreme Court addressed the issue of when an adjudicator's bias or prejudice would constitute a denial of procedural due process:

"Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This applies to administrative agencies which adjudicate as well as to courts. *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.' *In re Murchison, supra,* 349 U.S., at 136, 75 S.Ct., at 625; cf. *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927). In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him."

*See also Domek v. North Dakota State Personnel Bd.,* 430 N.W.2d 339 (N.D.1988); *Mattheis v. City of Hazen,* 421 N.W.2d 476 (N.D.1988). " 'Fairness of course requires an absence of actual bias in the trial of cases.... But to perform its high function in the best way, "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13 [99 L.Ed. 11] [ (1954) ].' " *Baier v. Hampton,* 440 N.W.2d 712, 715 (N.D.1989), quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955). "To satisfy due process requirements, administrative proceedings must be conducted by an impartial trier of the facts. When bias taints an administrative proceeding, no judgment based on that proceeding will be allowed to stand." 4 J. Stein, G. Mitchell, and B. Mezines, *Administrative Law* § 35.03[1] (1991). Under § 28–32–19(4), N.D.C.C., a court may overturn an administrative agency decision, if the agency's rules or procedure do not afford the appel-

lant a fair hearing. Judicial review provides the ultimate due process protection to those aggrieved by agency decisions. *Sletten v. Briggs,* 448 N.W.2d 607 (N.D.1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1135, 107 L.Ed.2d 1041 (1990).

Dr. Wentz's integrity has not been challenged. No one has alleged that Dr. Wentz "has a pecuniary interest in the outcome," that "he has been the target of personal abuse or criticism from the party before him" (*Withrow v. Larkin, supra*), or that he had any "personal animosity" (*Mattheis v. City of Hazen, supra,* 421 N.W.2d at 480). Thus, rather than an issue of actual bias, we are faced with an issue about prejudgment, "[a]n area closely akin to bias." 4 Stein, Mitchell, and Mezines, *supra,* § 35.03[1].

MSC relies on a number of decisions involving adjudicative facts in support of its assertion that Dr. Wentz impermissibly prejudged the relevant facts and law: *In re Murchison, supra; Baier v. Hampton, supra; Antoniu v. S.E.C.,* 877 F.2d 721 (8th Cir.1989), *cert. denied,* 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); *Cinderella Career and Finishing Schools, Inc. v. F.T.C.,* 425 F.2d 583 (D.C.Cir.1970); *New York State Inspection, Security and Law Enforcement Employees v. New York State Public Employment Relations Board,* 629 F.Supp. 33 (N.D.N.Y.1984).

▮ In *Antoniu,* the 8th Circuit nullified all proceedings occurring after Commissioner Cox made a speech about a pending case because the court concluded that "Cox had 'in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.'" (Citation omitted.) 877 F.2d at 726. Of similar import is *Cinderella,* where the court concluded that the Commission may alert the public to suspected violations of the law by factual press releases, but individual commissioners may not "prejudge cases or ... make speeches which give the appearance that the case has been prejudged." 425 F.2d at 590. Finally, in *New York State Inspection, Security and Law Enforcement Employees,* the court concluded that due process is not offended when a decision-maker has publicly taken a position on a policy issue related to a dispute, but "it is constitutionally unacceptable for a decision-maker to announce in advance his position on adjudicative facts." 629 F.Supp. at 45. The test for disqualification of a decision-maker in an adjudicative proceeding involving the determination of adjudicative facts is whether a disinterested observer may conclude that the agency has in some measure adjudged the facts and the law of a particular case in advance of hearing it. *Cinderella, supra.*

The Department asserts that Dr. Wentz's letter to Governor Sinner was only an announcement of Wentz's position about law and policy, which should not disqualify him from sitting as the hearing officer and does not violate due process. The Department relies on a number of decisions involving either administrative rulemaking proceedings or administrative adjudicatory proceedings in which legislative, but not adjudicative, facts were in issue: *Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948) (Some Commissioners' publicly announced opinions that the respondents' pricing system was a restraint of trade in violation of the Sherman Act did not disqualify the Commission.); *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429, 1435 (1941) (The fact that the Secretary of Agriculture "expressed strong views on matters believed by him to have been in issue, did not unfit him for exercising his duty."); and *Association of Nat'l Advertisers, Inc. v. F.T.C.,* 627 F.2d 1151, 1154 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) ("An agency member may be disqualified from such a [rulemaking] proceeding only when there is a clear and convincing showing that he has an unalterably closed mind on matters critical to the disposition of the rulemaking.").

Professor Davis has analyzed the decisions relied upon by MSC and the Department and other decisions on the effect of a decisionmaker's previously disclosed views:

"(1) A prejudgment or point of view about a question of law or policy, even if

so tenaciously held as to suggest a closed mind, is not, without more, a disqualification. (2) Similarly, a prejudgment about legislative facts that help answer a question of law or policy is not, without more, a disqualification. (3) Advance knowledge of adjudicative facts that are in issue is not alone a disqualification for finding those facts, but a prior commitment may be."

3 K. Davis, *Administrative Law Treatise* § 19:1 (1980). See also 4 J. Stein, G. Mitchell, and B. Mezines, *Administrative Law* § 35.03[1] (1992): "When an examiner or agency member has prejudged the facts of a case he must be disqualified. When he merely enters the proceeding with advance views on important policy matters in issue, there are no grounds for disqualification." Parties to an administrative proceeding have a right to a fair and open proceeding before an impartial decisionmaker, but an "impartial decisionmaker" does not mean one who is "uninformed, unthinking, or inarticulate." *Association of Nat'l Advertisers, Inc v. FTC, supra,* 627 F.2d at 1174.

The secreting of Dr. Wentz's letter to Governor Sinner sets this case apart from the decisions relied upon by the Department. Dr. Wentz appears to have prejudged and precommitted himself to some adjudicative facts, which has been held to be disqualifying or violative of due process. 3 K. Davis, *supra.* He appears to have similarly treated some legislative facts and policy, which is not ordinarily disqualifying or violative of due process. 3 K. Davis, *supra.* Dr. Wentz's undisclosed intent to deny MSC's permit application taints the procedure employed in this case. We need not determine if Dr. Wentz actually prejudged MSC's application so that the evidentiary hearing was irrelevant because "[t]here was no one present to hear with open ear and open mind any counterarguments [MSC] could muster." *Billington v. Underwood,* 613 F.2d 91, 95 (5th Cir.1980). We do conclude, however, that, because of the undisclosed intent, there was an inappropriate appearance of prejudgment and that the Department's procedure did not afford MSC a fair hearing, in violation of § 28–32–19(4), N.D.C.C.

"Administrative proceedings, in addition to actually adhering to due process notions of fairness, must also give the appearance of being fair." 4 Stein, Mitchell, and Mezines, *supra* § 35.03[1]. The Department's brief on appeal states that "[t]he Department normally issues a notice of intent to grant or deny an environmental permit prior to conducting a permit hearing." The Department deviated from that practice in this case and did not issue a notice of intent to deny the requested permit modification. It is disingenuous for the Department to argue that, in writing his letter to Governor Sinner, "Dr. Wentz was following the normal Department procedure of recommending a tentative Department intent to grant or deny a permit prior to public hearing." Dr. Wentz's opposition, the intensity of his opposition and the bases for his opposition to MSC's application, as evidenced by the letter to Governor Sinner, were not disclosed to MSC in advance of the hearing. The letter was not placed in the public file maintained in the administrative proceedings until after the Department denied MSC's application. The procedure employed by the Department does not "give the appearance of being fair."

 The right to fair hearing comporting with due process includes reasonable notice or opportunity to know of the claims of opposing parties and an opportunity to meet them. *Federal Trade Commission v. National Lead Co.,* 352 U.S. 419, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957); *Morgan v. U.S.,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); *North Alabama Express, Inc. v. U.S.,* 585 F.2d 783 (5th Cir.1978). In a contest with the Government in a quasijudicial proceeding, a litigant is entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its decision. *Morgan v. U.S., supra.*

When a party "cannot know what evidence is offered or considered and is not given an opportunity to test, explain, or refute," there is no meaningful hearing. *Williams Elec. Coop., Inc. v. Montana–Dakota Utilities Co.,* 79 N.W.2d 508, 526

(N.D.1956). Parties not afforded fair opportunity to prepare their cases are entitled to a second chance. *See Aggie Investments GP v. Public Service Comm'n*, 470 N.W.2d 805 (N.D.1991) and *Shark v. Northern States Power Co.*, 477 N.W.2d 251 (N.D.1991).

In *Gonzales v. U.S.*, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), a prosecution for refusing to submit to induction into the armed services, the only question was whether a petitioner, claiming exemption as a conscientious objector, was entitled to receive a copy of the recommendation made by the Department of Justice. The Supreme Court held that he was entitled to a copy of the recommendation, observing:

> "If petitioner had been afforded a copy of the recommendation, he might have successfully contradicted the basis of the Department's conclusion or diminished the forcefulness of its thrust.... The petitioner was entitled to know the thrust of the Department's recommendation so he could muster his facts and arguments to meet its contentions."

*Id.*, 348 U.S. at 413–14, 75 S.Ct. at 413, 99 L.Ed. at 472. If administrators disclose their opinions on relevant issues, "interested parties are at least aware of which opinions they must persuade an administrator to change." E. Gellhorn and G. Robinson, *Rulemaking "Due Process": An Inconclusive Dialogue*, 48 U.Chi.L.Rev. 201, 218 (1981). A party then will "at least have a warning", know what it is "up against" and can "proceed accordingly." *Id.*, at 236. Both parties to an administrative hearing "should be given equal opportunity to present evidence and such evidence should be carefully considered by the administrative agency." *Schadler v. Job Service North Dakota*, 361 N.W.2d 254, 258 (N.D.1985).

In our view, the Department's deviation from its usual practice of issuing a notice of intent to grant or deny an environmental permit before conducting a permit hearing, its failure to disclose that Dr. Wentz was firmly opposed to granting MSC's application, its failure to disclose the bases of Dr. Wentz's opposition and its denial of MSC's application, do not give the appearance of being fair. We conclude that the Department's procedure did not afford MSC a fair hearing, in violation of § 28–32–19(4), N.D.C.C.

Had the Department disclosed Dr. Wentz's opposition and the bases of his opposition, MSC would have had "a warning" and known what it was "up against", so that it could "proceed accordingly", with an "awareness of what matters must be countered", knowing "which opinions [it] must persuade [Dr. Wentz] to change." As in *Gonzales v. U.S.*, *supra*, 348 U.S. at 414, 75 S.Ct. at 413, 99 L.Ed. at 472, we believe that MSC "was entitled to know the thrust of the Department's recommendation so [it] could muster [its] facts and arguments to meet [the] contentions." Had MSC known of the extent of Dr. Wentz's opposition and the bases of his opposition, it might have been able to more efficiently and effectively marshal its evidence and arguments in an attempt to overcome Dr. Wentz's opposition. MSC might have been able to persuade Dr. Wentz that the ash would not contain "substantial" amounts of heavy metals, that the health risk posed by lead in the ash is not "substantial", that the "hydrogeologic appropriateness of the proposed site" is not subject to reasonable "uncertainty and disagreement", that there is no "reasonable concern regarding the long term adequacy" of the technology involved, that thinking "in terms of 'geologic time' " is inappropriate and that the environmental or human health threat is not "of sufficient magnitude to justify denial of the permit application." "An agency has a duty to revise its standards in light of new information." *AFL v. Marshall*, 617 F.2d 636, 668 n. 195 (D.C.Cir.1979). With proper notice, MSC might have been able to change Dr. Wentz's mind. Even if it were unsuccessful, MSC at least should have had a meaningful opportunity to overcome Dr. Wentz's opposition. Upon remand, MSC should have an opportunity to present evidence to Dr. Wentz to attempt to meet his now-disclosed concerns and to attempt to overcome his opposition to its application. To the extent that the district court order does

not grant a rehearing if MSC desires one, it is modified. Otherwise, the judgment is affirmed.

ERICKSTAD, C.J., VANDE WALLE, J., and DOUGLAS B. HEEN, Surrogate Judge, and JOEL D. MEDD, District Judge, concur.

JOEL D. MEDD, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of H.F. GIERKE III, J., DOUGLAS B. HEEN, Surrogate Judge, sitting due to the disqualification of MESCHKE, J. JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.

VANDE WALLE, Justice, concurring specially.

Dr. Wentz expressed his tentative position in writing prior to the hearing. He did not notify MSC of that position. Had he notified MSC of his tentative position prior to the hearing, MSC's due process rights would have been protected. With this understanding, I concur in the majority opinion.

The fact investigative, accusative and adjudicative functions are combined in one board or person is not in itself a denial of due process. *First American Bank & Trust Company v. Ellwein,* 221 N.W.2d 509 (N.D.1974). Although due process of law presupposes a fair and impartial hearing before a fair and impartial tribunal, the minimal due process that must be afforded participants before a administrative board or agency is not synonymous with minimal due process requirements in a court of law. *Id.* Thus, previous decisions of this court such as *Berdahl v. N.D. State Personnel Bd.,* 447 N.W.2d 300 (N.D.1989); *Domek v. N.D. State Personnel Bd.,* 430 N.W.2d 339 (N.D.1988); *Hammond v. North Dakota State Personnel Bd.,* 345 N.W.2d 359 (N.D. 1984); and *First American Bank Trust Company v. Ellwein, supra,* are not affected by our decision today.

Nevertheless, because administrative agencies are given duties to license and regulate they will ordinarily not approach their adjudicative functions without having performed investigative functions and, in the process, formed certain impressions and opinions. Indeed, the agency would be derelict in its duties if it did not do so, and must necessarily do so when it exercises accusative functions. In this instance, those impressions and opinions were expressed in writing, although not to MSC.

The majority does not decide what would be the result if we could divine the preconceived ideas of those decision makers who *in pectorum* [in their heart] have formed the same opinion but have left no trail thereof. Perhaps all agencies should be required by statute to express a preliminary determination so the parties to the hearing may be aware of the predilection of the agency and, as a result, of the burden they face in order to prevail. As the majority opinion observes, that was not done in this case, although the Department contends it normally issues a notice of intent to grant or deny an environmental permit prior to the hearing.

New statutes enacted by the 1991 Legislature appear to be designed to insulate the adjudicative function from the investigative or accusative functions. *See* § 28–32–08.1; 28–32–12.2; 28–32–13, NDCC. We have not yet been faced with an issue of whether or not the findings and decisions of a professional hearing officer are due the same deference as we give to a decision of the agency itself where the issue is one involving application of expertise entrusted to an agency composed of experts in that subject matter. *See, e.g., Bank of Hamilton v. State Banking Bd.,* 236 N.W.2d 921 (N.D. 1975).

MSC's application for a permit involves a matter of application of expertise; but we do not reverse on the merits of the decision of the Department of Health and Consolidated Laboratories. We reverse only because MSC had not been made aware of the Department's pre-hearing position. On that basis, I concur with the majority opinion.

ERICKSTAD, C.J., concurs.

JOEL D. MEDD, District Judge, concurring.

I concur in the opinion written by Justice Levine in that the district court decision should be affirmed for the reasons stated in this decision. However, the opinion states that "[u]pon remand, MSC should have an opportunity to present evidence *to Dr. Wentz* to attempt to meet his now-disclosed concerns and to attempt to overcome his opposition to its application." (Emphasis added)

My concern is that this might be construed as a directive that Dr. Wentz himself hear the case on remand. I prefer the language written by Judge Beede in which he declines to "micro manage the administrative agency or attempt to specify or impose procedure or any action that the agency already has authority to take."

I believe that Dr. Wentz certainly can proceed, under the then existing statute, as the administrative head of the health department to hear the matter himself on remand or to otherwise proceed under the Administrative Agencies Practice Act, N.D.C.C. 28–32 or the North Dakota Administrative Code 33–22–04 to appoint another hearing officer. I believe that this is the intent of the opinion but I feel that it should be so stated.