Dean Arthur DITTUS, Plaintiff
and Appellee,

v.

**NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Defendant
and Appellant.**

Civ. No. 920354.

Supreme Court of North Dakota.

June 16, 1993.

Thomas A. Dickson, of Nodland & Dickson, Bismarck, for plaintiff and appellee.

Michele G. Johnson, Asst. Atty. Gen., Attorney General's Office, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

The Department of Transportation appealed from a district court judgment reversing its administrative decision to suspend Dean Arthur Dittus's driving privileges for 91 days. We reverse the judgment of the district court and reinstate the license suspension.

On May 17, 1992, Dittus was arrested by Highway Patrol Trooper Richard Michaels for driving while under the influence of alcohol. Dittus agreed to submit to a blood test and Michaels took him to the Elgin Hospital. A registered nurse drew the blood sample according to the directions in the sample collection kit. The nurse used providone iodine as the skin disinfectant. The State Toxicologist determined that Dittus's alcohol concentration was 0.12 percent by weight.

Dittus requested an administrative hearing on the proposed license suspension. One of the Department's hearing officers presided over the hearing. Among the documents offered and admitted by the hearing officer was a July 25, 1988, memorandum issued to emergency room supervisors by the State Toxicologist regarding appropriate nonalcoholic, nonvolatile skin disinfectants to be used when drawing blood samples from persons arrested for driving while under the influence of alcohol. The memorandum stated in part that "[a]queous solutions of chlorhexidine, providone iodine, quaternary ammonium compounds,

germicidal soaps, etc. are quite satisfactory for this purpose and fit the description of 'non alcoholic, non volatile skin disinfectant.'" Dittus's attorney objected to admission of this memorandum:

"MR. DICKSON: We object to Exhibit 9A. This is not the current one, ... You know that. This isn't the proper one. We have checked to that.

"[HEARING OFFICER]: Well, yes, there is another one we can bring in if you want. But, 9 ...

"MR. DICKSON: 9A we object to and it's irrelevant. It's been outdated, and I have a feeling this record is being specifically manipulated because of that.

"... [T]his record is incomplete as the department has purposely not put in all the relevant documents, which apply to the blood analysis in the state of North Dakota."

The hearing officer noted the objection and received the document in evidence.

Dittus did not testify, but offered as an exhibit a photocopy of the providone iodine packet used when Dittus's blood was drawn. Dittus also offered as an exhibit a later memorandum, dated June 19, 1991, from the State Toxicologist to nurses and technicians which stated in part that "Acu-dyne prep swabs ... are non-alcoholic, non-volatile skin disinfectants to be used only in conjunction with the blood collection kits provided by the Office of the State Toxicologist." The hearing officer admitted these exhibits in evidence.

At the end of the hearing, Dittus argued that the Department "chose to leave out some of the current certified documents," thereby leaving a "gap in the evidence." Dittus argued that, pursuant to the Acu-dyne memorandum he introduced in evidence, "Acu–Dyne prep swabs are the swabs that are now being used in hospital emergency rooms at least since June of 1991, and that was not done in this case, and that's why the commissioner left the hole in the record to try to get around that...." Because Acu-dyne was not used, Dittus argued, the State Toxicologist's directives were not complied with,

the test was not fairly administered, and his license could not be suspended.

The hearing officer rejected these arguments, concluding that Michaels had grounds to stop Dittus and to believe he was driving under the influence, that Dittus was arrested, that the blood test was fairly administered, and that Dittus had a blood alcohol content of more than 0.10 percent by weight. The hearing officer suspended Dittus's driver's license for 91 days. Dittus appealed to the district court.

Nine days after Dittus's administrative hearing, this court issued its decision in *Kummer v. Backes*, 486 N.W.2d 252 (N.D. 1992). In *Kummer* we held that the State Toxicologist's 1991 Acu-dyne memorandum did not supplant his earlier 1988 memorandum on recommended nonalcoholic, nonvolatile skin disinfectants, and that the use of solutions other than Acu-dyne, such as providone iodine, conforms with the procedure required by the State Toxicologist. *See also Dibble v. Backes*, 489 N.W.2d 885 (N.D.1992); *Putney v. Backes*, 489 N.W.2d 886 (N.D.1992); *Woessner v. Backes*, 489 N.W.2d 886 (N.D.1992).

The district court nevertheless reversed Dittus's license suspension in October 1992. The court concluded:

"This record illustrates the dividing line between prosecutorial and adjudicative functions being combined in one person, the hearing officer. This record also demonstrates an occasion where the hearing officer overstepped that line to become the prosecutor, leaving well behind any semblance of impartiality.

\* \* \* \* \* \*

"The hearing held here was not meaningful—it was a sham. The evidence used against the driver by the adjudicator was collected by the adjudicator before the hearing, was received by the adjudicator over valid objection, and the improper evidence was used against the driver by the adjudicator."

The Department has appealed from the district court judgment.

█ When an administrative agency decision is appealed to a district court and

then to this court, we review the decision of the agency and look to the record compiled before the agency. *Schultz v. North Dakota Dept. of Human Services*, 372 N.W.2d 888 (N.D.1985). Our review of that decision is governed by § 28–32–19, N.D.C.C., which requires us to affirm: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the agency decision is supported by the conclusions of law; and (4) if the decision is in accordance with the law. *Sande v. State*, 440 N.W.2d 264 (N.D. 1989). Under § 28–32–19(4), N.D.C.C., we must overturn an administrative agency decision if the agency's rules or procedures do not afford the appellant a fair hearing. *Municipal Services Corp. v. State*, 483 N.W.2d 560 (N.D.1992).

■ Dittus asserts that reversal of his license suspension is required because the hearing officer's actions in this case violated his constitutional due process right to a fair hearing and violated the administrative agency separation-of-functions provisions of § 28–32–12.2, N.D.C.C.

I

■ We adhere to our previous decision in *Pladson v. Hjelle*, 368 N.W.2d 508 (N.D. 1985), which held that the mere combination of adjudicative and prosecutorial functions in the Department's hearing officer does not, without more, violate a driver's due process rights. *See also McNamara v. Director of Transportation*, 500 N.W.2d 585 (N.D.1993); *First American Bank & Trust Company v. Ellwein*, 221 N.W.2d 509 (N.D.), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974); *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).

Dittus argues, however, that "more" occurred in this case. He asserts that actual bias on the part of the hearing officer is evidenced by the hearing officer's choosing before the hearing and introducing at the hearing, only those exhibits necessary to support a suspension of his license. More specifically, Dittus claims that the hearing officer did not perform the perfunctory duty of merely introducing the required exhibits and conducting a general examination of the arresting officer, but prejudged the case by reviewing the evidence prior to the hearing, discovering that the skin disinfectant used was providone iodine rather than Acu-dyne, and then introducing and admitting the 1988 memorandum rather than the 1991 memorandum to support the suspension.

In *Municipal Services Corp., supra*, 483 N.W.2d at 563 (quoting 4 J. Stein, G. Mitchell, and B. Mezines, *Administrative Law* § 35.03[1]), we noted that issues of prejudgment are " 'closely akin' " to issues of actual bias that may taint an administrative proceeding. In that case, we considered whether the State Health Officer, who presided over an administrative hearing on an application to dispose of municipal waste combuster ash, had impermissibly prejudged the relevant facts and law. Before the hearing, the State Health Officer had written a letter to the Governor stating in part that " 'I am firmly opposed to permitting the landfill and ... I must conclude that there is a threat which in my opinion is of sufficient magnitude to justify denial of the permit application.' " *Municipal Services Corp., supra*, 483 N.W.2d at 562. We summarized the applicable principles to be considered when determining whether a decisionmaker has impermissibly prejudged a case to constitute a denial of a fair hearing:

> " '(1) A prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification. (2) Similarly, a prejudgment about legislative facts that help answer a question of law or policy is not, without more, a disqualification. (3) Advance knowledge of adjudicative facts that are in issue is not alone a disqualification for finding those facts, but a prior commitment may be.'
>
> "3 K. Davis, *Administrative Law Treatise* § 19:1 (1980). See also 4 J. Stein, G. Mitchell, and B. Mezines, *Administrative Law* § 35.03[1] (1992): 'When an examiner or agency member has pre-

judged the facts of a case he must be disqualified. When he merely enters the proceeding with advance views on important policy matters in issue, there are no grounds for disqualification.' Parties to an administrative proceeding have a right to a fair and open proceeding before an impartial decisionmaker, but an 'impartial decisionmaker' does not mean one who is 'uninformed, unthinking, or inarticulate.' *Association of Nat'l Advertisers, Inc. v. FTC*, [627 F.2d 1151, 1174 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) ]." *Municipal Services Corp., supra*, 483 N.W.2d at 563–564.

We found it unnecessary to determine if the State Health Officer actually prejudged the application, but concluded that there was an inappropriate appearance of prejudgment denying the applicant a fair hearing because the State Health Officer never disclosed, prior to or at the administrative hearing, his views on the application. Noting that there is no meaningful hearing when a party cannot know what evidence is offered or considered and is not given an opportunity to test, explain, or refute that evidence, we reasoned:

"If administrators disclose their opinions on relevant issues, 'interested parties are at least aware of which opinions they must persuade an administrator to change.' E. Gellhorn and G. Robinson, *Rulemaking 'Due Process': An Inconclusive Dialogue*, 48 U.Chi.L.Rev. 201, 218 (1981). A party then will 'at least have a warning', know what it is 'up against' and can 'proceed accordingly.' *Id.*, at 236. Both parties to an administrative hearing 'should be given equal opportunity to present evidence and such evidence should be carefully considered by the administrative agency.' *Schadler v. Job Service North Dakota*, 361 N.W.2d 254, 258 (N.D.1985)." *Municipal Services Corp., supra*, 483 N.W.2d at 565.

We remanded the case to allow the applicant an opportunity to present evidence to the State Health Officer "to attempt to meet his now-disclosed concerns and to attempt to overcome his opposition to its application." *Id.*

This case differs from *Municipal Services Corp.* The hearing officer chose to introduce the relevant State Toxicologist's memorandum that corresponded with the skin disinfectant used by the nurse who drew Dittus's blood. This asserted evidence of prejudgment pales in comparison with the State Health Officer's letter relied upon to show actual prejudgment in *Municipal Services Corp.* Moreover, in this case, Dittus was given an opportunity, and took advantage of that opportunity, to attempt to convince the hearing officer that he was wrong.

When the hearing officer offered the exhibit, Dittus objected on the ground that the memorandum was not current and was irrelevant. Dittus himself offered in evidence what he believed to be the current memorandum regarding appropriate skin disinfectants. That memorandum was received in evidence by the hearing officer and Dittus was given full reign to convince the hearing officer why the 1988 memorandum was irrelevant and why the 1991 memorandum was the relevant document. The hearing officer simply disagreed with Dittus's argument and made a legally correct decision under the law.[1] *See Kummer, supra.* These circumstances fall short of evidencing actual prejudgment amounting to denial of a fair hearing.

We conclude that Dittus's constitutional due process right to a fair hearing was not violated in this case.

## II

▆ Dittus asserts that the hearing officer's actions in this case violated the administrative agency separation-of-functions

---

1. The hearing officer's assumption that the 1988 memorandum had not been superseded by the 1991 memorandum is not indicative of bias or prejudgment, notwithstanding our decision in *Kummer v. Backes*, 486 N.W.2d 252 (N.D.1992), was not released until nine days after Dittus's administrative hearing. The Department hearing officer took the same position in *Kummer* and was affirmed by the district court prior to Dittus's hearing.

provisions of § 28–32–12.2, N.D.C.C., which provides:

"*Separation of functions.*

"1. No person who has served as investigator, prosecutor, or advocate in the investigatory or prehearing stage of a contested case proceeding may serve as hearing officer.

"2. No person who is subject to the direct authority of one who has served as an investigator, prosecutor, or advocate in the investigatory or prehearing stage of a contested case proceeding may serve as hearing officer.

"3. Any other person may serve as hearing officer in a contested case hearing, unless a party demonstrates grounds for disqualification.

"4. Any person may serve as hearing officer at successive stages of the same contested case proceeding, unless a party demonstrates grounds for disqualification."

By enacting this statute, the legislature intended to remove the appearance of impropriety perceived by individuals involved in the administrative hearing process. *Ertelt v. North Dakota Dept. of Transportation*, 491 N.W.2d 736 (N.D.1992).[2]

Dittus asserts that the hearing officer, by choosing before the hearing to introduce in evidence the 1988 memorandum rather than the 1991 memorandum, performed investigative or prosecutorial functions during "the investigatory or prehearing stage" of the case, and therefore, could not also serve as the hearing officer under § 28–32–12.2(1), N.D.C.C. We reject this argument.

In the field of administrative law, driver's license suspension proceedings are unique. The legislature has sought to maximize the use of documentary evidence to simplify and expedite those proceedings, while preserving a driver's right to dispute the fair administration of blood tests. *Frost v. North Dakota Dept. of Transportation*, 487 N.W.2d 6 (N.D.1992). In effect, the "legislature has struck a balance between procedural efficiency and substantive reliability." *Salter v. Hjelle*, 415 N.W.2d 801, 803 (N.D.1987). Thus, a blood test result is admissible in an administrative proceeding if it is shown that the test was "fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist...." Section 39–20–07(5), N.D.C.C.

The State Toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and upon approval of the methods and devices required to perform the tests and the persons qualified to administer them, the State Toxicologist is required to "prepare and file written record of the approval with the director and the clerk of the district court in each county...." Section 39–20–07(6), N.D.C.C. That material may be supplemented when the State Toxicologist "determines it to be necessary, and any supplemental material has the same force and effect as the material that it supplements." *Id.* Copies of these records certified by the clerk of district court must be admitted as prima facie evidence of the matters stated in the records. Section 39–20–07(7), N.D.C.C. A certified copy of the analytical report of a blood analysis issued by the State Toxicologist must also

2. Additional legislation also intended to remove the appearance of impropriety in administrative proceedings, Chapter 54–57, N.D.C.C., was enacted in 1991. *See* 1991 N.D.Sess.Laws, Chapter 637. This legislation created the Office of Administrative Hearings which employs independent hearing officers to preside at administrative agency hearings. However, the Department of Transportation was one of several administrative agencies exempted from the requirements of this chapter. *See* § 54–57–03(1), N.D.C.C. In seeking and obtaining the exemption, Department officials relied on our decision in *Pladson, supra,* and argued that the large number of hearings it conducts, the increased costs involved, and the logistics of its hearings justified exclusion from the requirements of that legislation. *See* Testimony on Senate Bill 2234 before the Senate Judiciary Committee, January 14, 1991, and January 21, 1991; Testimony on Senate Bill 2234 before the House Judiciary Committee, March 6, 1991; Written Statements of Richard Backes, Director, and Gene Boyle, Management Director, North Dakota Department of Transportation.

be accepted as prima facie evidence of the result. Section 39–20–07(8), N.D.C.C. Also, a signed statement from the nurse or medical technician drawing a blood sample for testing "is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of such evidence may be required." Section 39–20–07(10), N.D.C.C.

Furthermore, § 39–20–05(4), N.D.C.C., which addresses administrative license suspension hearings, provides:

"4. At a hearing under this section, the regularly kept records of the commissioner may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, any copy of a certified copy of an analytical report of a blood, urine, or saliva sample received by the commissioner from the office of the state toxicologist or a law enforcement officer, a certified copy of the checklist and test records received by the commissioner from a certified breath test operator and any copy of a certified copy of a certificate of the office of the state toxicologist relating to approved methods, devices, operators, materials, and checklists used for testing for blood alcohol concentration received by the commissioner from the office of the state toxicologist or the clerk of district court, are regularly kept records of the commissioner."

These certified copies of approved methods, devices, operators, materials, and checklists required to be filed with the clerk of each district court and with the Department are "boilerplate" documents that are routine evidence in any administrative license suspension hearing. The 1991 memorandum and 1988 memorandum at issue in this case are among these "boilerplate" documents.

■ We believe that a hearing officer's marshaling of these documents prior to an administrative hearing is tantamount to a ministerial act. We do not believe that

looking among these "boilerplate" exhibits for the relevant document that fits a particular license suspension case prior to the hearing constitutes the performance of investigative or prosecutorial functions during the investigatory or prehearing stage of the case within the meaning of § 28–32–12.2(1), N.D.C.C. To hold otherwise would require that a hearing officer clutter every administrative hearing record with useless, irrelevant documentary evidence. A hearing officer is directed to admit "only relevant evidence" at a hearing. Section 28–32–06(1), N.D.C.C. Refusing to allow a hearing officer to choose between these "boilerplate" exhibits prior to the hearing would exalt form over substance.

We do not imply that a hearing officer's marshaling of evidence other than these "boilerplate" exhibits prior to the hearing will not violate § 28–32–12.2 and require appointment of another hearing officer. For example, in *Ertelt, supra,* a hearing officer presided over a hearing which resulted in the driver's 91–day license suspension for being in actual physical control of a motor vehicle while under the influence of alcohol. The same hearing officer presided over a second hearing which resulted in the indefinite suspension of the driver's license for failure to file proof of financial responsibility. The driver alleged that the hearing officer generated the notice of intent to suspend his license indefinitely based on her personal knowledge of the first hearing and on her independent discovery of the arresting officer's crash report. We held that this conduct "would constitute investigatory or prosecutorial activity on the part of the hearing officer at the prehearing stage of the case" within the meaning of § 28–32–12.2, and that the hearing officer could not properly preside over the second hearing. *Ertelt, supra,* 491 N.W.2d at 740. We decline, however, to extend the *Ertelt* rationale to a hearing officer's essentially ministerial act of choosing between relevant "boilerplate" exhibits prior to a hearing. The hearing officer's actions in this case did not constitute a violation of § 28–32–12.2.

We conclude that the Department's findings are supported by a preponderance of the evidence, its conclusions are sustained by the findings of fact, its decision is supported by the conclusions of law, and its decision is in accordance with the law. Accordingly, the judgment of the district court is reversed and the Department's decision suspending Dittus's driver's license for 91 days is reinstated.

SANDSTROM, MESCHKE, NEUMANN and LEVINE, JJ., concur.