Mark A. SABINASH, Petitioner and Appellee,

v.

DIRECTOR OF THE DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.

Civ. No. 930179.

Supreme Court of North Dakota.

Dec. 2, 1993.

———

Randall L. Hoffman (argued), of Paulson & Merrick, Jamestown, for petitioner and appellee.

Douglas B. Anderson (argued), Asst. Atty. Gen., Attorney General's Office, Bismarck, for respondent and appellant.

NEUMANN, Justice.

The Director of the Department of Transportation appeals from a district court judgment reversing the Director's decision to suspend Mark A. Sabinash's driving privileges for 91 days. We reverse the judgment and reinstate the Director's decision.

Jamestown Police Officer Thomas Nagel arrested Sabinash on January 17, 1993, for being in actual physical control of a vehicle while under the influence of alcohol. On February 1, 1993, after blood test results showed a blood alcohol concentration of .17 percent, Jamestown Police Sergeant Bruce Judd gave Sabinash a form entitled "Report and Notice Under Chapter 39–20 NDCC." In addition to a notice of hearing provision, Sabinash's form contained the following provisions relating to a temporary operator's permit:

"TEMPORARY OPERATOR'S PERMIT: (To be issued to driver whether marked valid or not valid.) ND License/Permit attached? __X__ Yes ___ No

"This permit is:

"—— Valid as a Temporary Operator's Permit for 25 days from date issued (unless terminated earlier by hearing officer).

"—— Not valid as a Temporary Operator's Permit because: —— Non–Licensed Driver —— License Suspended/Revoked —— Previous permit (NDCC 39–20)

"THIS PERMIT IS VOID UNLESS ACCOMPANIED BY THE NUMBERED CITATION SHOWN ABOVE.

"I certify that I personally issued this Temporary Operator's Permit to the driver at 8:57 o'clock p.m., on 02–01 1993, at Stutsman Co. L.E.C. (location)

/s/ Sgt. Bruce C. Judd 213
Signature of Officer/Badge or I.D. No."

Although Sabinash was entitled to a "valid" temporary operator's permit, Judd mistakenly failed to check either the box indicating that Sabinash's temporary operator's permit was "valid" or the box indicating it was "not valid."

Sabinash requested an administrative hearing on the suspension of his driving privileges. A notice of administrative hearing was mailed to Sabinash on February 5, 1993. This notice indicated that the date of issuance of his temporary operator's permit was February 1, 1993.

At the administrative hearing, the hearing officer received in evidence, over Sabinash's objection, the "Report and Notice" form. Sabinash argued that he had not received a valid temporary operator's permit as required by NDCC § 39–20–03.1(1) and, as a result, the Director had no jurisdiction to conduct the administrative hearing. The hearing officer found that the arresting officer had reasonable grounds to believe Sabinash was in actual physical control, that Sabinash was arrested and tested in accordance with the law, and that Sabinash had a blood alcohol concentration of at least .10 percent by weight. The hearing officer also determined that Sabinash's driving privileges were not improperly suspended prior to the hearing and that "[t]he temporary operator's permit issued, even though not marked valid or invalid, is sufficient in this instance." The hearing officer suspended Sabinash's driving

privileges for 91 days. Sabinash appealed to the district court.

The district court reversed the hearing officer's decision. The court determined that Sabinash's "due process rights were violated by the failure to follow the statutory requirement that he be given a temporary operator's permit...." The court concluded:

"Because of the importance of due process rights in our society, and the legislature's determination of the balance between the public's right to protection from intoxicated drivers and the individual driver's due process rights, the Department's failure to follow the statutory requirement and grant [Sabinash] a temporary operator's permit deprives the Department of jurisdiction."

The Director appealed.

We must affirm the Director's decision: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the decision is supported by the conclusions of law; and (4) if the decision is in accordance with law. *Dittus v. North Dakota Dept. of Transportation,* 502 N.W.2d 100, 103 (N.D.1993); NDCC § 28–32–19.

It is well settled that a driver's license is a protectable property interest that may not be suspended or revoked without due process. *Powell v. Hjelle,* 408 N.W.2d 737, 738 (N.D.1987); *Mackey v. Montrym,* 443 U.S. 1, 12 n. 7, 99 S.Ct. 2612, 2617 n. 7, 61 L.Ed.2d 321 (1979). Procedural due process requires notice and a meaningful opportunity for a hearing appropriate to the nature of the case. *Powell.*

Section 39–20–03.1(1), NDCC, is the legislative mandate intended to protect a driver's due process rights between the time of an arrest for an alcohol related offense and the driver's opportunity for a hearing on a proposed revocation or suspension of driving privileges. The statute directs that, if a person submits to a test and the test shows an alcohol concentration of at least .10 percent by weight,

"The law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit if the person then has valid operating privileges, extending driving privileges for the next twenty-five days, or until earlier terminated by the decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke, suspend, or deny driving privileges in this state."

NDCC § 39–20–03.1(1).

Sabinash weaves an interesting argument. He claims that in order to legally drive in this state, a person must have valid "driving privileges." He asserts that a person does not acquire "driving privileges" unless two prerequisites are met: (1) the person must have "valid operating privileges," and (2) the person must have evidence of those privileges through a valid driver's or "operator's license." *See* NDCC §§ 39–06–01(1), 39–06–06 and 39–06–16. Although Sabinash had "valid operating privileges" prior to his hearing because there had been no formal suspension or revocation of those privileges in his driving record, Sabinash asserts that he did not have a valid driver's "license" prior to the hearing because the temporary operator's permit issued by Judd was not marked "valid" or "not valid." This, according to Sabinash, resulted in a de facto suspension or revocation of his "driving privileges" without notice and meaningful opportunity for a hearing in violation of his procedural due process rights. The failure to comply with NDCC § 39–20–03.1(1) and the resulting constitutional violation, according to Sabinash, further divested the Director of jurisdiction to conduct the administrative hearing on the suspension of his driving privileges.

Under the circumstances of this case, we decline to rule that such dire consequences flowed from Judd's failure to mark the appropriate box on the "Report and Notice" form. Although Sabinash's temporary operator's permit was not marked as "valid," it was also not marked as "not valid." Nor was one of the three reasons marked for invali-

dating the permit. There is no hint in this record that Judd's failure to mark the appropriate box was anything other than an inadvertent oversight. At worst, Judd's failure to mark one of the boxes may have resulted in Sabinash receiving an ambiguous temporary operator's permit, but it clearly did not result in his receiving an invalid one.

Moreover, there is no evidence that Sabinash was stopped by law enforcement officers while driving with this temporary operator's permit, no evidence that he refrained from driving because of the permit's ambiguity, and no evidence that he was even aware of the ambiguity prior to the administrative hearing. Nagel, when confronted with the ambiguity at the hearing, testified that if he stopped a driver with a permit that had neither been marked valid nor invalid, he would not be able to determine the validity of the permit without first calling in to "Bismarck through the teletype system to find out if it was valid." He testified that if the verification showed a current license and the permit was accompanied by the required citation, the driver would not be cited for being non-licensed or for driving while under suspension.

We conclude that, although Sabinash's permit may have been facially incomplete, his permit was valid, and, having suffered no adverse consequences from the oversight, Sabinash was deprived of no rights granted by NDCC § 39–20–03.1(1) or the due process clause.

 Sabinash also asserts that his equal protection rights were violated in this case. He claims that Judd's "mistake" created two classifications of citizens for which there is no rational basis: (1) those persons who fall within the terms of NDCC § 39–20–03.1(1) and are issued either a valid or invalid temporary operator's permit; and (2) those persons who fall within the terms of the statute but are issued neither a valid nor invalid permit. Even assuming that negligent conduct can support a claim for denial of equal protection, *but see, e.g., E & T Realty v. Strickland,* 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988) ["Mere error or mistake in judgment when applying a facially neutral statute does not violate the equal protection clause."], Sabinash did not suffer any deprivation or receive any disparate treatment through this mistaken "classification." Sabinash has not established an equal protection violation.

 Sabinash's statutory and constitutional rights were not violated in this case. We conclude that Judd's inadvertent failure to mark Sabinash's temporary operator's permit as "valid" or "not valid" did not divest the Director of jurisdiction to conduct the license suspension hearing. *See Erickson v. Director, N.D. Dept. of Transportation,* 507 N.W.2d 537, 540 (N.D.1993); *Ding v. Director, North Dakota D.O.T.,* 484 N.W.2d 496, 501 (N.D.1992); *Schwind v. Director, North Dakota Dept. of Transp.,* 462 N.W.2d 147, 149 (N.D.1990).

Accordingly, we reverse the judgment of the district court and reinstate the Director's decision.

VANDE WALLE, C.J., and SANDSTROM, MESCHKE and LEVINE, JJ., concur.