Lorraine F. DOMEK, Petitioner
and Appellee,

v.

NORTH DAKOTA STATE PERSONNEL
BOARD, North Dakota Department of
Human Services, and the North Dakota
State Hospital, Respondents and Appellants.

Civ. No. 880078.

Supreme Court of North Dakota.

Oct. 18, 1988.

Weiss, Wright & Paulson, Jamestown, for petitioner and appellee; argued by James A. Wright.

John J. Fox (argued), Asst. Atty. Gen., Jamestown, for respondents and appellants North Dakota Dept. of Human Services and the North Dakota State Hosp.

Patricia May McCord Moen, Attorney General's Office, Bismarck, for respondent

and appellant North Dakota State Personnel Bd. No appearance.

MESCHKE, Justice.

We consider whether a state employee's job was eliminated in compliance with regulations and guidelines for a reduction in force. The State Personnel Board determined that it was. We agree and conclude that the employee had a fair hearing before the State Personnel Board. Therefore, we reverse the judgment of the district court and reinstate the ruling of the State Personnel Board.

The 1985 Legislature directed the North Dakota State Hospital to reduce its library staff of five and one-half positions by one and one-half positions. Hospital management solicited volunteers for the reduction in force (RIF). When no one volunteered, the head of the library staff, Gertrude Berndt, was directed to eliminate positions. She eliminated the Librarian I position and reduced one full time Library Associate I position to half time. Berndt concluded that the library "will no longer need the Librarian I position, and will be able to provide ... services with the remaining staff."

When Berndt made the decision, she understood that the staff library and patient library would soon be consolidated in one area. She determined that only one supervisory librarian would then be necessary. Librarian I and Librarian II were the only supervisory positions. Domek was the only Librarian I; Berndt was the only Librarian II. Domek was transferred to another open position in the Hospital and was changed from grade 20 to grade 11, with a $6,000 loss of annual income.

Domek contested this action. After the Superintendent of the Hospital upheld the decision, she appealed to the State Personnel Board, which also upheld termination of her library job. Domek appealed to the

district court. The court reversed, concluding that "the RIF policies ... were not followed" and that a "procedural defect is apparent in the use of incomplete and inaccurate comparison charts ... because of the irrational conclusion that [policy] step 6 was inapplicable." The district court ordered reinstatement, back pay and attorney's fees. The State appealed.

The State maintained that proper procedures were followed and that the Personnel Board's decision was reasonable. Domek contended that her termination was improper because Berndt relied on a comparison chart which did not accurately show Domek's education and experience. Domek complained that less qualified persons than she were retained in Library Associate I positions, with grade 13 classifications. She also argued that Personnel Board member Dennis Goetz, an employee of the State Hospital, should have recused himself because of a conflict of interest.

A decision of the State Personnel Board must be affirmed unless one of the six factors listed in NDCC 28–32–19 appears. *Choukalos v. North Dakota State Personnel Board*, 429 N.W.2d 441 (N.D.1988). When reviewing an administrative agency decision, we take into account whether the agency could have reasonably reached its factual determinations by the greater weight of all the evidence. *Moses v. North Dakota Workers Comp. Bureau*, 429 N.W. 2d 436 (N.D.1988). We review the record compiled by the agency, but the analysis of the district court is entitled to respect if it is sound. *Medcenter One v. Job Service North Dakota*, 410 N.W.2d 521 (N.D.1987).

## REDUCTION IN FORCE

The State Personnel Board regulates policies for reduction in force of state employees.[1] Regulation NDAC 59.5–03–03–07 said:

"1. Promulgate such rules and hold such hearings as are necessary to properly perform the duties, functions, and powers imposed on or vested in it by law. The promulgation of rules shall be accomplished in accordance with provisions of chapter 28–32.

---

1. NDCC 54–44.3–07 reads in part:
   *"Duties of board.* The primary responsibility of the board shall be to foster and assure a system of personnel administration in the classified service of state government. In carrying out this function it shall:

"The appointing authority may, after giving written notice to the employee, lay off the employee as a result of a reduction-in-force. Classified employees who have satisfactorily completed their probationary periods have the right to appeal a reduction-in-force only on the basis that approved agency reduction-in-force policies were not followed.

"All agencies, departments, and institutions shall include the following as a minimum in their reduction-in-force actions:

"1. An analysis of the acquired knowledge, demonstrated skills, and versatility of their employees compared to the work to be done and the available funding....

"2. An analysis of the level of demonstrated work performance....

"3. A review of the length of service of their employees....

"4. An analysis of the extent of required training needed to train a reassigned employee to full productivity in a different position....

"Agencies shall develop and retain written documentation of the required analysis and review.

"An agency may not subject classified employees who have satisfactorily completed their probationary period to reduction-in-force while there are emergency, temporary, provisional, or probationary employees serving either in the same class, or in the same agency location. Classified employees who are subject to reassignment must possess the skills and abilities required to perform the other work after appropriate training.

"Agencies shall conduct reductions-in-force in a nondiscriminatory manner and may not use such actions as a substitute for disciplinary measures." [2]

The State Hospital is an administrative unit of the Department of Human Services and subject to its personnel policies, including its "Procedure for a Reduction in Force." Thus, we must assess whether the Personnel Board reasonably determined that the applicable regulation and policy were followed by the State Hospital in terminating Domek.

The State Hospital relied on Step 1 of the policy of the Department of Human Services. Step 1 authorized a department head to decide how many positions to cut within each classification of employees in that department:

"The Executive Director, OR IN THE CASE OF THE NORTH DAKOTA STATE HOSPITAL, THE SUPERINTENDENT, will designate which program(s) or support service(s) within the respective divisions will reduce staff. Division directors, OR IN THE CASE OF THE NORTH DAKOTA STATE HOSPITAL, DEPARTMENT HEADS, will then determine within their program(s) or support service(s) and appropriate administrative unit(s) the number of positions within specific classification(s) which will be discontinued." (Capitalization in Record).

Domek relied on Step 6. Step 6 directed a department head to use certain criteria in selecting which employee within a classification to eliminate:

"Permanent satisfactorily-performing employees in the job classification(s) within the program(s) or support service(s) designated ... to be reduced in staff will then be RIF'd on the basis of the ... DEPARTMENT HEADS determination of how best to utilize division resources such as personnel, funds, equipment, and office space. First, ... DEPARTMENT HEADS should re-exam-

---

"2. Review and hear comments from any concerned individuals, departments, agencies, or their representatives, on any rules or modifications thereof adopted by the personnel division. Such a rule or modification will be effective upon implementation by the division; however, if the board finds that the rule constitutes poor administrative practice, is arbitrary, capricious, contrary to the spirit or intent of the personnel system, or otherwise contrary to law, it may disapprove the rule or modification on that basis, thus repealing the concerned rule or modification.

"3. Review any personnel action relating to pay ranges or job classification."

**2.** Regulation 59.5–03–03–07 has since been amended, effective May 1, 1987.

ine the purpose, goals, and objectives of the division OR DEPARTMENT and programs in view of a reduction of funds and/or work. Second, when determining which permanent position within specific classifications must be discontinued, the following factors require consideration and will be given preference when determining employee retention:

"(a) The acquired knowledge, demonstrated skills and abilities of each employee compared to the work to be done and the available funding.

"(b) The pattern of performance evaluation and the rating level. Employees demonstrating a consistent high level of performance should receive special review attention.

"(c) The extent of training investment. The term training investment refers to the amount of training required to bring a reassigned employee's performance to full productivity and to the amount of training already expended by the state.

"(d) The years of employment. The appointing authority should consider the number of years and months of state and other employment in the classified service, and the number of years and months of employment within the employee's current classification. Special emphasis should be placed on employment in the current classification because current experience is likely to be more in demand and relevant.

"(e) The diversity of relevant related job experiences. Generally speaking, the more extensive range of diversified experiences, the more adaptable the retained employee will be in doing redesigned job assignments because of previous job experiences.

"(f) The ability to work under stressful job environment. Oftentimes a reduction in force does not alter the public expectation of services and may not, at least immediately, change state statutes regarding required delivery of public services. Therefore, compressed work assignments demanding timely and accurate decision-making may produce a more stressful job environment than under traditional working conditions.

"(g) Veteran status.

"(h) Reduction in force action taken by a state agency should assure that employees affected by RIF should not be subject to discrimination in any term or condition of employment, including a reduction in force, solely on the basis of race, color, religion, sex, age, national origin, political beliefs, handicap, or other non-merit factors." (Capitalization in Record).

Domek contended that incomplete comparison charts negatively affected her under Step 6. The State Hospital argued that inaccuracies in the charts were irrelevant because Step 6 did not enter into this decision. The State contended that comparison charts are significant only after Step 1 has been completed and the department head must choose among several employees within a single classification subject to RIF. Because Domek was the only employee in her classification and was not compared with anyone else, the State maintained that the charts were inapplicable.

■ Whether the charts were used in the decision and whether they negatively affected Domek are questions of fact. We conclude that the determination of the State Personnel Board was reasonable. Therefore, we do not disturb its finding that "[t]he comparison chart itself was not a basis for decision, ... and thus the chart's content, even though incomplete, was not a factor."

Domek insisted that she should have been compared with library employees in other classifications. The State Hospital countered that it was not necessary to do so because Step 6 only called for comparison within the same classification. Domek contended that failure to accurately compare her with other library employees in different classifications denied her fair treatment. She contested the Hospital's theory, arguing that the use of a sufficiently narrow classification could RIF any sin-

gle employee without the comparisons contemplated by the regulation and policy. Although not entirely clear, Domek seemed to argue for the right to replace, or "bump," any other library employee with a lower status, such as Library Associate I.

■ Neither the regulation nor the policy expressly called for "bumping." We cannot say that the Personnel Board should require bumping. That is a policy matter within the discretion of the Personnel Board and each state agency under its regulations.

In a somewhat comparable case, we recently held that a RIF policy in a teacher's contract did not require a school district to allow bumping by a teacher in a RIF'd position. *Law v. Mandan Public School Dist.*, 411 N.W.2d 375 (N.D.1987). While we held that the school board was required to compare that teacher with those teaching other subjects under that contract, we did not find an express "bumping" requirement. "Law [the RIF'd teacher] asks that he be retained for a position for which he was not hired in preference to a teacher who was hired for and who did teach in that position. We cannot conclude that the plain language of the policy requires such a result." *Id.* at 380. Nor can we conclude that the plain language of this agency policy or applicable regulation required bumping here.

We conclude that the State Personnel Board reasonably determined that the applicable regulation and policy were followed in Domek's termination.

## FAIR HEARING

■ Under NDCC 28–32–19(4) we overturn an agency decision if "[t]he rules or procedure of the agency have not afforded the appellant a fair hearing." For a fair hearing "both parties should be given equal opportunity to present evidence and such evidence should be carefully considered by the administrative agency." *Schadler v. Job Service North Dakota*, 361 N.W.2d 254, 258 (N.D.1985). Domek had the opportunity to challenge the inaccurate comparison chart and to present her case to the Hospital Superintendent and then to the Personnel Board. *See Law, supra* at 380. We conclude that the Board confirmed Berndt's decision after hearing and weighing all pertinent facts.

Domek contended that Personnel Board member Goetz should have recused himself from this hearing because he was also a State Hospital employee. The district court agreed with Domek's contention that Goetz's position created a conflict of interest which made the hearing unfair. We do not agree.

■ Goetz was not directly involved with the library at the State Hospital. This court has held that a state employee must show more than a relationship between a member of the Personnel Board and the agency of the State involved in the proceeding to establish a conflict of interest. By definition, members of the State Personnel Board are mostly State officials and employees. NDCC 54–44.3–03. This court's position was outlined in *Hammond v. North Dakota State Personnel Board*, 345 N.W.2d 359, 362 (N.D.1984):

> "Hammond asserts that there was a conflict of interest between [Lt. Governor] Sands' position as acting chairman of the State Laboratories Commission while at the same time acting as a member of the Board with the responsibility of evaluating Hammond's termination by Director Seifert. We conclude that Hammond was not entitled to have Sands recuse himself as a member of the Board under the circumstances. The fact that Sands, acting as a member of the State Laboratories Commission, had the authority to oversee the actions of Director Seifert does not, without more, result in a conflict of interest, which would disable him from making a fair and impartial decision regarding the director's dismissal of a department employee."

Domek asserted that more than a mere relationship existed. Domek claimed that Goetz "assumed the role of an advocate" for the Hospital. We have reviewed the record. We find nothing in Goetz's questions or participation in the hearing which amounted to a denial of Domek's right to a

fair hearing. *See Schadler v. Job Service North Dakota, supra.*

In *Mattheis v. City of Hazen,* 421 N.W. 2d 476 (N.D.1988), we addressed instances in which the probability of bias of an adjudicator is intolerably high. We recognized such instances include "those in which the adjudicator has a pecuniary interest in the outcome [or] in which he has been the target of personal abuse or criticism from the party before him." *Id.* at 480. There was no evidence in this case that Goetz was prejudiced against Domek because of past personal abuse. Domek did not show how Goetz' employment by the State Hospital was sufficient to create a "pecuniary interest in the outcome." In *Mattheis,* we said: "while there may be circumstances leading to high probability of bias in addition to pecuniary interest or personal bias, the plaintiff has not supported his opposition to the motion with any such evidence." *Id.* We similarly conclude that Domek has not supported her assertion of disqualifying bias in this case.

### CONCLUSION

We realize that Domek suffered significant economic impact from her transfer to another position and reduction in grade. Perhaps, as Domek argued in her brief, a RIF decision with less negative impact on her could have been made. But in spite of our sympathy for Domek, we conclude that the agency policy and applicable regulation were reasonably applied and we conclude that Domek had a fair hearing. Therefore, we reverse the district court's decision and reinstate the decision of the State Personnel Board.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, J., concurs in the result.