**Jan PRATT, Plaintiff and Appellant,**

v.

**HEARTVIEW FOUNDATION, a non-profit corporation, Defendant and Appellee.**

**Civ. No. 930234.**

Supreme Court of North Dakota.

Feb. 23, 1994.

Daniel J. Chapman of Chapman and Chapman, Bismarck, for plaintiff and appellant.

William P. Zuger of Zuger Law Offices, Bismarck, for defendant and appellee.

LEVINE, Justice.

Jan Pratt appeals from summary judgment in favor of Heartview Foundation and the trial court's award of Heartview's expert witness fee. We affirm.

Heartview hired Pratt in November 1979 to work as a payroll/personnel technician in its administrative services department. She was later promoted to its business office. In October 1990, Heartview terminated Pratt's employment as part of a reduction in staff based on a continued decrease in patient census.

Pratt brought suit against Heartview alleging wrongful termination based on Heartview's alleged failure to implement a reduction-in-force policy according to its employee handbook. Heartview moved for summary judgment, arguing that the disclaimer in its employee handbook stated that the handbook's provisions were informational only and did not give any rights or privileges to Heartview's employees. Pratt responded that Heartview never adopted the disclaimer and, alternately, that the disclaimer did not apply to Pratt because it was adopted after she was hired. The trial court first denied Heartview's motion for summary judgment, finding that issues of fact existed as to whether the disclaimer superseded any inconsistent provisions in the handbook and whether Pratt acquiesced to the disclaimer. Heartview then renewed its motion for summary judgment and the trial court, without a memorandum opinion, granted it and dismissed Pratt's action with prejudice and with costs and disbursements for Heartview. Heartview included in its statement of costs and disbursements an expert witness fee for the accountant it had retained on the issue of damages. Pratt objected, arguing that the fee was unreasonable and that Heartview's expert witness was neither a witness, because he did not testify, nor an expert. The trial court overruled Pratt's objection.

Pratt appealed. Because we conclude that the handbook provisions upon which Pratt relies are not sufficiently specific or definite to create contractual promises, we affirm the summary judgment. We also affirm the trial court's award of Heartview's expert witness fee because NDCC § 28–26–06(5) does not require a witness to testify in order to qualify as an expert witness and the trial court did not abuse its discretion in awarding Heartview its expert witness fee.

The first issue is whether the trial court erred in granting summary judgment in favor of Heartview. Summary judgment is appropriate if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or their inferences, or if resolving disputed facts would not alter the result. E.g., Bailey v. Perkins Restaurants, Inc., 398 N.W.2d 120 (N.D.1986). We review the facts in the light most favorable to the party opposing summary judgment. Id.

Pratt argues that Heartview terminated her employment in violation of its employee handbook. Pratt relies on two provisions from the handbook to construct her argument:

"Policy # 30

"Termination of Employment

"Termination of employment at Heartview Foundation is through employee decision, mutual consent of employee and supervisor, or supervisory decision.

.　　.　　.　　.　　.

"Supervisory Decision. Termination for just cause as outlined in the policies titled 'Employee Discipline' (policy # 26) and 'Unauthorized Absence' (policy # 31) do not require advance notification, but notification of termination shall be in writing."

"Policy # 21

"Reduction in Personnel/Temporary Lay–Offs

"When due to reduced workload caused by a temporary reduction in patient census or other factors of a short term nature, the Administrator/Chief Executive Officer is authorized to make temporary lay-offs or to implement a reduction in force policy.

"At his/her discretion, the Administrator/Chief Executive Officer may place employees in a leave of absence status. During this period employees may be eligible to continue to accrue and/or receive fringe benefits based on the opinion of the Administrator/Chief Executive Officer as to what is most equitable and in the best interests of Heartview and the employee."

The gist of Pratt's argument is that Policy 30 does not apply to her because it only allows termination by supervisory decision for employee discipline or unauthorized absences. Therefore, she argues, Policy 21 must apply to her termination, and because Heartview failed to implement a reduction-in-force policy before it terminated her employment, it breached its handbook provision. Pratt argues that Policy 21 gives her the contractual right to be terminated according to a policy for a reduction in force. Without such a policy, according to Pratt, Heartview may not terminate her employment based on a reduction in force. We conclude that Policy 21 and Policy 30 lack the specificity necessary to create binding contract terms and therefore, we do not reach the issue of whether the disclaimer applied to Pratt.

▮▮ Employment for an indefinite term is presumed to be at will. NDCC § 34–03–01. However, a promise of employment on particular terms of unspecified duration, if in the form of an offer and if accepted, may create a binding unilateral contract. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983); *see also Aaland v. Lake Region Grain Coop.*, 511 N.W.2d 244 (N.D.1994). In *Bailey v. Perkins Restaurants, supra* at 122, we recognized that "an employer may be contractually bound by promises, express or implied, in employee handbooks with respect to job security and termination procedures." *See also Hammond v. North Dakota State Personnel Bd.*, 345 N.W.2d 359 (N.D.1984). Such promises must meet the general requirements of a unilateral offer to be binding: they must be sufficiently definite or specific and must be communicated to the employee. *E.g., Bjorn v. Associated Regional & Univ. Pathologists, Inc.*, 208 Ill.App.3d 505, 153 Ill.Dec. 459, 567 N.E.2d 417 (1990); *Goodkind v. University of Minnesota*, 417 N.W.2d 636 (Minn.1988); *Pine River, supra; Swanson v. Liquid Air Corp.*, 118 Wash.2d 512, 826 P.2d 664 (1992); *Stewart v. Chevron Chemical Co.*, 111 Wash.2d 609, 762 P.2d 1143 (1988); *see also Bailey, supra*. An employer's general statements of policy are no more than that and do not meet the contractual requirements of a unilateral offer to contract or offer to modify a contract. *Goodkind, supra; Pine River, supra*. Language which is not mandatory does not create legal rights. *Dathe v. Wildrose School Dist. No. 91*, 217 N.W.2d 781 (N.D.1974). Generally, whether the requisites for a contract have been met so that a contract exists is a question of fact. *E.g., Hirschkorn v. Severson*, 319 N.W.2d 475 (N.D.1982); *see also Jerry Harmon Motors, Inc. v. First Nat'l Bank & Trust Co.*, 472 N.W.2d 748, 752 (N.D.1991) [stating that the existence of a contract becomes "a purely legal question only when ... the ... requisite elements of a contract[ ] are demonstrated clearly and unambiguously on the face of the written contract"]. However, a court may conclude that a contract does not exist as a matter of law where the evidence does not support a reasonable inference that the requisites for a contract have been met. *See*

*Union State Bank v. Woell,* 434 N.W.2d 712, 717 (N.D.1989) [concluding as a matter of law that alleged contract failed for lack of certainty of its terms where evidence did not support a reasonable inference that parties agreed to necessary specifics]; *Swanson, supra,* 826 P.2d at 669 [stating that although whether contract exists is a question of fact, "if reasonable minds cannot differ as to whether language sufficiently constitutes an offer or a promise of specific treatment in specific circumstances, as a matter of law the claimed promise cannot be part of the employment relationship"].

In *Stewart,* the Washington Supreme Court concluded that the employer's policy manual, which provided that "consideration should be given to performance, experience and length of service" in laying off employees, was not sufficiently specific to create a binding promise. The court based its conclusion on the facts that the employer used "shall," "will," and "must" elsewhere in the manual, indicating that provisions using "should" were advisory, not mandatory, and that the provision did not set out a specific procedure for the employer to follow in considering the criteria. In *Bjorn,* an Illinois court concluded that a handbook provision stating that employees could be terminated with or without cause during a probationary period was not sufficiently specific to create a "just cause only" contract after the probationary period had passed. The court stated that "in the absence of clear, promissory language and no description of specific disciplinary procedures, the language of the [handbook provision] does not create enforceable employment contract rights sufficient to overcome the presumption of an employment relationship terminable at will." *Bjorn, supra,* 153 Ill.Dec. at 462, 567 N.E.2d at 420 (citations omitted).

*Swanson* gives an example of a sufficiently specific handbook provision. In that case, the employer's handbook provided:

"Dishonesty, drinking or use of drugs on duty, recklessness resulting in an accident, or the carrying of unauthorized passengers shall be deemed sufficient and proper cause for discharge without prior notice.

In all other instances of misconduct, at least one warning, shall be given."

The employer, without a previous warning, fired Swanson for fighting. The Washington Supreme Court concluded, "Unlike the alleged contractual promise in *Stewart,* this promise [that in all other instances of misconduct, employees shall be given at least one warning] is specific enough to constitute an enforceable contract term...." *Swanson, supra,* 826 P.2d at 670 (citation omitted), *see also Hammond, supra* at 361 [concluding that provisions of state's personnel manual were binding where manual provided that employees may be dismissed for "inefficiency, insubordination, misconduct, or other just cause" and defined "cause"].

Here, Pratt asks us to determine that the language of Policy 21 that "the Administrator/Chief Executive Officer is authorized ... to implement a reduction in force policy" is contractually binding on Heartview. We decline to do so. Unlike the provision in *Swanson,* Policy 21 indicates no mandatory nor specific intent. It does not provide that the administrator *shall* pass a reduction-in-force policy, it simply states that Heartview's administrator *is authorized* to implement a reduction-in-force policy. Like the manual in *Stewart,* Heartview uses language elsewhere in its handbook which better indicates an "intention to act or refrain from acting in a specified way," *Bailey, supra* at 122 (quoting *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984)), such as "[t]he committee shall establish rules and regulations which shall define the operation of the committee" (Policy 35), and "Heartview Foundation shall not arbitrarily refuse employment to individuals with previous history of alcoholism and/or drug abuse" (Policy 39). Nor does Policy 21 set out a specific procedure governing the timing, form, criteria, etc., of a reduction-in-force policy. Therefore, we conclude that the language "is authorized ... to implement a reduction in force policy" is not sufficiently specific or definite to create a contractual obligation requiring Heartview to implement a policy before it may terminate employees based on a reduction in force.

Pratt's apparent suggestion that Policy 30 limits Heartview's ability to terminate employees by supervisory decision to those instances involving employee discipline or unauthorized absences likewise fails. Policy 30, for Pratt's purposes, suffers from the same infirmity as Policy 21. It lacks the necessary specificity to constitute a contract term limiting Heartview's ability to terminate employees by supervisory decision. Like the handbook provision in *Bjorn,* "in the absence of clear, promissory language," Policy 21 "does not create enforceable employment contract rights sufficient to overcome the presumption of an employment relationship terminable at will."

We conclude, as a matter of law, that the record does not support a reasonable inference that the provisions of Policy 21 and Policy 30 are sufficiently definite to constitute contract terms. Therefore, summary judgment was appropriate.

■ Pratt also raises the issue of whether the trial court erred in awarding Heartview the fee of its nontestifying expert witness. NDCC § 28–26–06(5) governs expert witness fees as part of costs and disbursements:

"The fees of expert witnesses. Such fees must be reasonable fees as determined by the court, plus his actual expense. The following are nevertheless in the sole discretion of the trial court:

a. The number of expert witnesses who are allowed fees or expenses;

b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid such allowed expert witnesses."

Pratt relies on *United Dev. Corp. v. State Highway Dep't,* 133 N.W.2d 439 (N.D.1965), for the proposition that a nontestifying expert witness is not a "witness" within the meaning of section 28–26–06(5). In that case, we stated that "any costs taxed for time spent in preparation or for time when the witness was not in attendance at the trial were improper." *Id.* at 444. However, we clearly based our holding on our determination that the legislature intended to limit expert witness fees to "days of attendance at the trial, while testifying, waiting to testify, or waiting to give rebuttal testimony." *Id.* Our determination was based in part on the version of section 28–26–06(5) in effect at the time, which limited expert witness fees to fifty dollars per day. *See* 1957 N.D.Laws 215. Since then, however, the legislature has amended section 28–26–06(5) to allow expressly for time spent preparing for trial and to remove the daily cap on expert witness fees. Under the current version of section 28–26–06(5), at least twice, we have upheld a trial court's award of a fee for a nontestifying expert witness, finding no abuse of discretion. *See Wastvedt v. Vaaler,* 430 N.W.2d 561, 568–69 (N.D.1988); *Keller v. Vermeer Mfg. Co.,* 360 N.W.2d 502, 507–08 (N.D.1984). We do not believe that section 28–26–06(5) requires that an expert witness actually testify before the trial court may include her fee in a party's costs and disbursements. Indeed, such a construction would be contrary to the judicial policy of encouraging settlements and speedy resolution of disputes.

Pratt also argues that the trial court abused its discretion in finding that Heartview's witness, a certified public accountant, qualified as an expert and that the amount of the fee allowed by the trial court was unreasonable. We reject these unsubstantiated arguments and conclude the trial court did not abuse its discretion.

Affirmed.

VANDE WALLE, C.J., and MESCHKE, SANDSTROM and NEUMANN, JJ., concur.