Carol OSTERMAN–LEVITT,
Plaintiff and Appellant,

v.

MEDQUEST, INC., a North Dakota corporation, and Mercy Medical Center, a North Dakota non-profit corporation, Defendants and Appellees.

Civ. No. 930235.

Supreme Court of North Dakota.

March 8, 1994.

Patrick Leier, Williston, for plaintiff and appellant. Submitted on brief.

David E. Reich of Pearce & Durick, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

Carol Osterman–Levitt appeals from a summary judgment dismissing her claims for wrongful termination of an employment contract against MedQuest, Inc., and its parent corporation, Mercy Medical Center (Mercy). The trial court ruled as a matter of law the defendants' personnel policies did not create a contract for continuing employment of Osterman–Levitt and, even if they did, the defendants did not violate those policies and wrongfully terminate or fail to rehire her. Because genuine issues of material fact exist as to both issues, summary judgment was inappropriate and we therefore reverse dismissal of Osterman–Levitt's breach of contract claim. Because Osterman–Levitt failed to challenge on appeal dismissal of her claims for breach of an implied covenant of good

faith and fair dealing and for damage to her reputation caused by the termination, we affirm dismissal of those claims.

## I

MedQuest provides management and personnel services to Mercy, a health care provider in Williston. Osterman–Levitt was first employed by Mercy in December 1978. During the ensuing years, she was employed as education director and eldercare coordinator. In May 1988, she was hired by MedQuest to serve as its director of marketing. On February 28, 1989, MedQuest's president and chief executive officer, Robert Fale, told Osterman–Levitt that her position of director of marketing would be terminated, not because of her job performance, but because those duties would be shifted to the various department managers. Fale told her there were no other unfilled employment positions for which she would be qualified.

After elimination of the director of marketing position, Lynn Borud, director of Mercy, assumed some of the responsibilities of the director of marketing position in addition to his normal duties. No new director of marketing was hired. But Fale hired Laurel Boustad, who had been manager of another clinic, for a new staff position of administrative assistant for special projects at Mercy. Boustad began working in May 1989. This new position was not offered to Osterman–Levitt.

Osterman–Levitt brought this action asserting the defendants' personnel policies created a contract for continuing employment which was breached by her termination and the defendants wrongfully failed to rehire her for the position of administrative assistant for special projects in violation of those personnel policies. The trial court granted the defendants' motion for summary judgment, finding "no evidence ... that there was a contract of employment for a specific term or that [Osterman–Levitt] could only be terminated for cause." Osterman–Levitt appealed.

## II

■ Summary judgment allows disposal of a controversy if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Ebach v. Ralston,* 469 N.W.2d 801, 803 (N.D.1991).

## A

■ Employment without a definite term is presumed to be at will. *Rykowsky v. Dickinson Public School Dist. No. 1,* 508 N.W.2d 348, 349 (N.D.1993). The employment at will doctrine is codified at N.D.C.C. § 34–03–01, which provides "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." Under the statute, if there is no fixed duration of employment, there is generally no employment contract. *Aaland v. Lake Region Grain Cooperative,* 511 N.W.2d 244, 246 (N.D.1994). However, the parties, by contract, can overcome the presumption of at will employment and create in the employee enforceable employment rights. *Bykonen v. United Hospital,* 479 N.W.2d 140, 141 (N.D.1992). A promise of employment on particular terms of unspecified duration, if in the form of an offer and if accepted, may create a binding contract. *Pratt v. Heartview Foundation,* 512 N.W.2d 675, 677 (N.D. 1994).

■ Generally, whether a contract exists is a question of fact. *Hirschkorn v. Severson,* 319 N.W.2d 475, 478 (N.D.1982). But if the intent of the parties can be ascertained from the agreement alone, interpretation of the contract is a question of law. *Madler v. McKenzie County,* 467 N.W.2d 709, 712 (N.D.1991). If the terms of a contract are ambiguous, extrinsic evidence of the parties' intent may be considered, and the terms of the contract and the parties' intent become questions of fact. *Madler.* "If 'an employer promulgates a manual of personnel policies, the entire manual will be examined to determine whether it discloses an intent to overcome the presumption in Section 34–03–01, N.D.C.C.'" *Rykowsky* [quoting *Schmidt v. Ramsey County,* 488 N.W.2d 411, 413 (N.D.Ct.App.1992) ]. Promises, express or

implied, in personnel policies with respect to job security and termination procedures must be sufficiently definite or specific and must be communicated to the employee to be enforceable. *Pratt,* 512 N.W.2d at 677.

■ Osterman–Levitt relies on written policies, which were distributed to all employees in staff positions, and written procedures which were distributed along with the policies to all employees in management or supervisory positions. Osterman–Levitt was provided a policy and procedure book and, while employed as education director from 1983 through 1986, was responsible for developing the policy and procedure program and for coordinating changes to the policy manual. Osterman–Levitt stated in an affidavit "[t]he policy manual that we operated under and my contacts with ... Fale definitely provided an atmosphere of job security and fair treatment promises throughout which caused myself and others to remain on the job...."

An introductory letter to the personnel policies states in part:

"This booklet has been prepared to help us reach our desired goals in health care. It serves to tell you what your responsibilities are to the hospital, patient and fellow employee. It also tells what the hospital's responsibilities are to you as an employee."

One policy, entitled "Employment Status," states there is a 90–day probationary period for new employees during which the employee may "be terminated involuntarily without notice." "Permanent employees" were entitled to a "Pension Plan." A separate "Wage and Salary Program" existed for "General Staff" and "Supervisory/Managerial Staff." The program for general staff included a step salary system. A policy on "Job Posting" says the personnel director "will post on the official bulletin board" job vacancies for a period of seven days. A policy on "Promotion and Transfer" states "[i]n situations where the qualifications of applicants are equal, seniority is utilized as the only determining factor for hiring. Inhouse applicants would have precedence over the applicants from the outside." Another policy states "[f]ormer employees are eligible for re-employment."

A policy entitled "Terminations" states "[r]esignation, quitting, lay off and dismissal are various methods of termination." The policy defines resignation as "a voluntary action by an employee to sever the employment relationship;" quitting as "a voluntary action by the employee to sever the employment relationship without following proper procedures;" lay off as "an action by the hospital to reduce the size of the work force;" and dismissal as "the severance of the employment relationship by the hospital due to serious deficiencies on the part of the employee." There is also a "Reduction in Work Force" procedure which states "[r]eduction will be made by department/unit on the basis of job classification and length of continuous service." The procedure further says the personnel department will maintain a list of employees separated because of staff reductions and contact them if job openings occur.

There is no express disclaimer stating the policies and procedures are not to be construed as forming part of an employment contract. The defendants, however, argue no enforceable contract rights exist because the "Terminations" policy states "[e]mployment at the hospital is based upon mutual consent. Either the employee or the hospital may find it necessary to sever the employment relationship." The defendants also rely on language, in a policy entitled "Management[']s Responsibilities And Rights," that management has "the right to determine and change the size composition and/or qualifications of the work force."

This Court has upheld summary judgment dismissals of wrongful termination claims in cases when explicit disclaimers stated policies were not intended to create enforceable contract rights. *See Bykonen* at 142 (express disclaimer language said policies did not create contract of employment); *Eldridge v. Evangelical Lutheran Good Samaritan Soc.,* 417 N.W.2d 797, 800 n. 3 (N.D. 1987) (explicit disclaimer said no policy, benefit or procedure may be construed to be part of an employment contract); *Bailey v. Perkins Restaurants, Inc.,* 398 N.W.2d 120, 121 (N.D.1986) (conspicuous disclaimer that handbook is not to be construed to form a

contract). In *Schmidt* at 413 n. 2, reversing a summary judgment of dismissal where the manual contained no disclaimer, the Court of Appeals said "explicit disclaimers are ordinarily required in employee handbooks in order to preserve the at-will status of the statutory presumption. . . ."

The language relied on by the defendants does not rise to the level of a conspicuous and explicit disclaimer. The statements can as easily be construed as consistent with the existence of enforceable contract rights as being inconsistent with their existence. The policies in this case are silent on whether the terms and benefits set out affected or modified the defendants' right to terminate the employment relationship at will. They are not insufficiently specific or definite as a matter of law to create a contractual obligation. *Compare Pratt,* 512 N.W.2d at 678 (language merely authorizing employer to implement a reduction in force policy created no contractual obligation to implement a policy before employer could terminate employee based on a reduction in force). The policies and procedures in this case are ambiguous, creating a question of fact whether they were intended by the parties to express terms of the employment arrangement. *See Aaland,* 511 N.W.2d at 244; *Sadler v. Basin Electric Power Co-op.,* 409 N.W.2d 87, 89 (N.D.1987); *Schmidt* at 415. The trial court erred in granting summary judgment on this issue.

### B

The defendants alternatively argue summary judgment was appropriate because there is no evidence any of the personnel policies were violated in this case.

■ Referring to herself as a "laid-off employee," Osterman–Levitt asserts the defendants not only violated the "Job Posting" policy, but violated the "Reduction in Work Force" procedures by not offering her the new staff position of administrative assistant for special projects, a position Osterman–Levitt claims she was qualified to occupy. This "recall" procedure provides if job openings occur within 90 days following the employee's date of termination,

"the Personnel Department will contact employees in the following groups in the order listed to determine their level of interest:

"1) Employees in the same job classification

"2) Employees in other job classifications who might be qualifiable with two weeks training.

"The employees within each of these groups will be rank ordered by length of continuous service."

The defendants assert this provision does not apply under the circumstances. Laurel Boustad stated in an affidavit that she was hired for the position in February 1989, before Osterman–Levitt's position was eliminated. The defendants claim the opening of the position of administrative assistant for special projects occurred and was offered to Boustad prior to the elimination of Osterman–Levitt's position on February 28, 1989, and, therefore, was not a job opening which occurred within 90 days after Osterman–Levitt's termination.

We reject this argument. First, Osterman–Levitt disputes that Boustad accepted the position before elimination of the director of marketing position. Moreover, although Osterman–Levitt acknowledged in deposition testimony that Boustad was contacted and offered the position before the end of February 1989, a fact finder could reasonably infer the defendants came to the decisions to abolish Osterman–Levitt's position and to create Boustad's position during the same time period. It could also be reasonably inferred the defendants chose to hire Boustad before abolishing Osterman–Levitt's position in a conscious effort to avoid the effect of the recall provision, thereby implicating a violation of the established procedure. Viewing the evidence in the light most favorable to Osterman–Levitt, genuine issues of material fact exist precluding summary judgment on the question of whether defendants violated their policies or procedures.

The defendants also assert the director of marketing position and the administrative assistant for special projects position were not in the same job classification and Osterman–Levitt could not qualify for the new position with two weeks of training. According to

Fale, Osterman–Levitt lacked the training and experience required for the position of administrative assistant for special projects because the position called for a person with knowledge of clinic management and third party reimbursement, and with a background in organizing and implementing clinical services, as well as experience dealing with physicians on a daily basis. However, Osterman–Levitt stated by affidavit she had the requisite background and experience, was qualified for the position, or could have become qualified within two weeks. This, too, creates a genuine issue of material fact inappropriate for summary judgment disposition.

The trial court erred in granting summary judgment dismissing Osterman–Levitt's breach of contract claim.

### III

Osterman–Levitt also asserted in her complaint claims for breach of an implied covenant of good faith and fair dealing and for damage to her reputation caused by the termination of her employment. These separate claims were addressed by the parties in the trial court. The trial court concluded "[n]one of [Osterman–Levitt's] causes of action are tenable under the facts shown and under the existing law of North Dakota."

On appeal, Osterman–Levitt has neither briefed nor argued issues relating to dismissal of these claims. Issues not briefed or argued are deemed abandoned. *Olmstead v. First Interstate Bank of Fargo, N.A.,* 449 N.W.2d 804, 807 (N.D.1989). We therefore affirm summary judgment dismissal of these claims.

Accordingly, we reverse the summary judgment dismissal of Osterman–Levitt's breach of contract claim and remand for trial. The summary judgment is otherwise affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.