1997 ND 140

**Dominic VOLESKY, Plaintiff and Appellant,**

v.

**NORTH DAKOTA GAME AND FISH DEPARTMENT and North Dakota State Personnel Board, Defendants and Appellees.**

**Civil No. 960374.**

Supreme Court of North Dakota.

July 17, 1997.

Rehearing Denied Sept. 8, 1997.

Daniel J. Chapman (argued), of Chapman & Chapman, Bismarck, for Plaintiff and Appellant.

Tag C. Anderson (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for Defendants and Appellees.

NEUMANN, Justice.

[¶ 1] Dominic Volesky appealed from a judgment affirming a State Personnel Board decision adopting a hearing officer's recommendation that the Game and Fish Department properly eliminated Volesky's job through a reduction in force (RIF). We hold Game and Fish's elimination of Volesky's job complied with the law for a RIF and the Board's decision that Game and Fish's action was not a reprisal is supported by a preponderance of the evidence. We affirm.

[¶ 2] Volesky was a classified, nonprobationary employee at Game and Fish, holding the position of Pilot II. Volesky initially worked in the enforcement division at Game and Fish, where his duties included enforcement flying, aircraft maintenance, and recordkeeping. In 1991, "some problems" developed with Volesky's work performance. According to Volesky, the problems developed after he reported some wardens were padding their expense accounts and were using State vehicles for personal business. According to Game and Fish employees, the problems emanated from Volesky's poor enforcement judgment and inability to accept criticism or supervision.

[¶ 3] In 1991, Volesky agreed to an intra-agency transfer from the enforcement division to the administrative services division, and his flying duties subsequently decreased. According to Game and Fish, Volesky's flying duties decreased because the agency decided to use contract pilots and because enforcement staff questioned Volesky's enforcement judgment and refused to fly with him. In July 1993, Volesky filed an internal agency grievance, alleging Game and Fish reduced his flying duties as a reprisal for reporting illegal activity and wrongdoing by Game and Fish employees. The Director of Game and Fish, K.L. Cool, denied Volesky's grievance, and Volesky appealed to the State Personnel Board.

[¶ 4] While Volesky's reprisal appeal was pending, Game and Fish eliminated the Pilot II classification, effective April 28, 1994, through a RIF. Volesky was the only person in the Pilot II classification, and he filed an internal agency grievance, alleging the RIF was a reprisal. Cool denied Volesky's grievance, and Volesky appealed to the State Personnel Board.

[¶ 5] The hearing officer consolidated the initial reprisal appeal and the RIF appeal. The hearing officer recommended finding Game and Fish was not required under N.D.A.C. § 59.5–03–03–07 to compare Volesky's position with other employees in different classifications because he was the only person in the Pilot II classification. The hearing officer also recommended finding Game and Fish had conducted the RIF in accordance with administrative regulations and Volesky had failed to show his reduction in flying duties or the termination was a reprisal. The Board adopted the hearing officer's recommendations. The district court affirmed the Board's decision, and Volesky appealed.

[¶ 6] Chapter 28–32, N.D.C.C., governs our review of administrative agency decisions. Under this chapter, although the analysis of the district court is entitled to respect, we review the findings and decision of the agency and not those of the district court. *Wagner v. Sheridan County Soc. Serv. Bd.*, 518 N.W.2d 724, 728 (N.D.1994). Sections 28–32–19 and 28–32–21, N.D.C.C., outline our standard of review of a decision by the Board. *Jacobs v. North Dakota State Pers. Bd.*, 551 N.W.2d 779, 781 (N.D.1996). Section 28–32–19, N.D.C.C., directs this court to affirm the Board's order unless:

"1. The order is not in accordance with the law.

"2. The order is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions of law and order of the agency are not supported by its findings of fact."

 [¶ 7] Under N.D.C.C. § 28–32–19, our review involves a three-step process to decide whether the Board's findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, and its decision is supported by its conclusions of law and is in accordance with the law. *Jacobs*, 551 N.W.2d at 781. In reviewing the Board's findings of fact, we do not make independent findings or substitute our judgment for that of the Board; instead, we decide whether a reasoning mind could have reasonably decided the Board's factual conclusions are supported by the weight of the evidence. *Id.*

 [¶ 8] Volesky contends the Board's decision is not in accordance with the law. He argues the Board erred in applying *Domek v. North Dakota State Pers. Bd.*, 430 N.W.2d 339 (N.D.1988), and deciding Game and Fish was not required by N.D.A.C. § 59.5–03–03–07, to compare his Pilot II classification with other employees in different classifications.

[¶ 9] When Volesky's position was eliminated, N.D.A.C. § 59.5–03–03–07 said:

"Reduction-in-force. The appointing authority may, after giving written notice to the employee, lay off the employee as a result of a reduction-in-force. Classified employees who have satisfactorily completed their probationary periods have the right to appeal a reduction-in-force only on the basis that the following four factors that are required to be included in an agency's reduction-in-force policy were not followed.

"1. An analysis of the acquired knowledge, demonstrated skills, and versatility of their employees compared to the work to be done and the available funding. Employees lacking the necessary skills and versatility should be considered for reduction.

"2. An analysis of the level of demonstrated work performance. Employees having a consistently low level of performance should be considered for reduction.

"3. A review of the length of service of their employees. Appointing authorities should list the number of years and months employees have been in the classified service. Employees with the fewest years of service should be considered for reduction.

"4. An analysis of the extent of required training needed to train a reassigned employee to full productivity in a different position. Employees requiring substantial retraining should be considered for reduction.

"Agencies shall develop and retain written documentation of the required analysis and review.

"An agency may not subject classified employees who have satisfactorily completed their probationary periods to reduction-in-force while there are emergency, temporary, provisional, or probationary employees serving in the same class in the same agency location. Classified employees who are subject to reassignment must possess the skills and abilities required to perform the other work after appropriate training.

"Agencies shall conduct reductions-in-force in a nondiscriminatory manner and may not use such actions as a substitute for disciplinary measures."

[¶ 10] *Domek* involved the RIF of a Librarian I at the State Hospital, which was an administrative unit of the Department of Human Services and was subject to the Department's personnel policies, including a "Procedure for a Reduction in Force." The Department's "Procedure for a Reduction in Force" included Step 1, which authorized a department head to decide how many positions to cut within each classification of employees in that department, and Step 6, which directed a department head to use comparative criteria in selecting which employee within a classification to eliminate. Domek was the only person in the Librarian I classification, and the State Hospital elimi-

nated her position without comparing her to other employees in different classifications.

[¶ 11] Domek contended she should have been compared with library employees in other classifications under Step 6 of the Department's "Procedure for a Reduction in Force." The State Hospital asserted Step 6 did not apply because it required a comparison within the same classification and Domek was the only employee in the Librarian I classification.

[¶ 12] We said:

". . . Domek seemed to argue for the right to replace, or 'bump,' any other library employee with a lower status, such as Library Associate I.

"Neither the regulation nor the policy expressly called for 'bumping.' We cannot say that the Personnel Board should require bumping. That is a policy matter within the discretion of the Personnel Board and each state agency under its regulations.

"In a somewhat comparable case, we recently held that a RIF policy in a teacher's contract did not require a school district to allow bumping by a teacher in a RIF'd position. *Law v. Mandan Public School Dist.*, 411 N.W.2d 375 (N.D.1987). While we held that the school board was required to compare that teacher with those teaching other subjects under that contract, we did not find an express 'bumping' requirement. 'Law [the RIF'd teacher] asks that he be retained for a position for which he was not hired in preference to a teacher who was hired for and who did teach in that position. We cannot conclude that the plain language of the policy requires such a result.' *Id.* at 380. Nor can we conclude that the plain language of this agency policy or applicable regulation required bumping here.

"We conclude that the State Personnel Board reasonably determined that the ap-plicable regulation and policy were followed in Domek's termination."

*Domek*, 430 N.W.2d at 343.

[¶ 13] Volesky argues *Domek* is not controlling because it involved the interpretation of a formal agency RIF policy and Game and Fish had no comparable RIF policy. *Domek* involved the interpretation of both N.D.A.C. § 59.5–03–03–07 and the Department of Human Services' RIF policy. We held both the regulation and the Department's RIF policy did not require a comparison between employees in different classifications. Although Game and Fish did not have a formal RIF policy like the one in *Domek*, that case does not require an agency to have a formal RIF policy. Section 59.5–03–03–07, N.D.A.C., had the force and effect of law and was part of Volesky's employment relationship with Game and Fish. *See Knight v. North Dakota State Indus. Sch.*, 540 N.W.2d 387, 389 (N.D. 1995).

[¶ 14] Volesky also contends a post-*Domek* amendment to N.D.A.C. § 59.5–03–03–07 required an agency to adopt a formal RIF policy which incorporated the four criteria for comparison of positions in N.D.A.C. § 59.5–03–03–07. However, the language relied upon by Volesky—"the following four factors that are required to be included in an agency's reduction-in-force policy"—does not expressly require an agency to adopt a formal RIF policy for comparison of positions. *Cf. Pratt v. Heartview Foundation*, 512 N.W.2d 675, 678 (N.D.1994) (private entity's personnel policy did not require employer to implement a formal RIF policy before it could RIF employee).

[¶ 15] Section 59.5–03–03–07, N.D.A.C., was part of Volesky's employment relationship with Game and Fish, and the issue is whether that regulation required a comparison of Volesky's job to other jobs. In our view, the post-*Domek* amendment to N.D.A.C. § 59.5–03–03–07 did not change the result of *Domek*.[1] Additionally, as in *Domek*,

---

1. In *Domek*, 430 N.W.2d at 342, we quoted part of the regulation:

"Classified employees who have satisfactorily completed their probationary periods have the right to appeal a reduction-in-force only on the basis that approved agency reduction-in-force policies were not followed.

"All agencies, departments, and institutions shall include the following as a minimum in their reduction-in-force actions:

"1. An analysis of the acquired knowledge, demonstrated skills, and versatility of their employees compared to the work to be done and the available funding. . . .

part of the regulation at issue here said nonprobationary employees may not be subject to a RIF while there are emergency, temporary, provisional, or probationary employees serving "in the same class." When read as a whole, we believe the regulation manifested an intent to require comparison of employees "in the same class," but did not require comparison of employees in different classifications. Although in effectuating a RIF it may be logical for an agency to compare some employees in different classifications, *Domek* and N.D.A.C. § 59.5–03–03–07 do not require a comparison of employees in different classifications.

[¶ 16] Here, Volesky was the only person in the Pilot II classification. He argues Game and Fish should have compared him to another employee who also did flying for the agency. The other employee, however, was classified as a Biologist II, and under *Domek* and N.D.A.C. § 59.5–03–03–07, Game and Fish was not required to compare Volesky to another employee in a different job classification.

■ [¶ 17] Volesky also argues the elimination of his job did not reduce the force at Game and Fish, because the agency had the same number of employees before and after his position was eliminated. He contends the Board erred in deciding the reduction in his flying time and subsequent RIF was not a reprisal for reporting illegal activity and other wrongdoing by Game and Fish employees.

■ [¶ 18] When Volesky was terminated, N.D.A.C. § 59.5–03–03–02(5) defined a RIF as a "loss of employment by layoff of an employee from the employee's present position as a result of the elimination of a program, a reduction in the number of full-time equivalent positions by the legislative assembly, lack of work, curtailment of work, lack of funds, expiration of grants, or reorganization." The term "reorganization" is broad enough to cover a multitude of management decisions for restructuring the allocation of an agency's resources and people to accomplish the agency's mission, but "it is not an enchanted blanket that can be used to cover improper agency action." *Cobb v. Department of Labor*, 774 F.2d 475, 477 (Fed.Cir. 1985). An agency may reorganize and abolish a position for reasons of economy and efficiency as long as the abolishment is in good faith and not a subterfuge to terminate the individual while leaving the position intact. *See* 15A Am.Jur.2d *Civil Service* § 72 et seq. (1976); Annot., 87 A.L.R.3d 1165 *Abolition of Civil Service Position* § 2 (1978).

[¶ 19] When Volesky's position was eliminated, N.D.A.C. § 59.5–03–03–07 said, "[a]gencies shall conduct reductions-in-force in a nondiscriminatory manner and may not use such actions as a substitute for disciplinary measures." Section 59.5–03–03–08, N.D.A.C., precluded an appointing authority from taking a reprisal action against a nonprobationary classified employee and authorized the employee to appeal the claimed reprisal action. Section 59.5–03–03–02(6), N.D.A.C., defined a "reprisal action" as "unfavorable adverse employment-related actions taken against an employee by an appointing authority for appealing to the state personnel board, for exercising the employee's rights under the State and Political Subdivision Employees Relations Act of 1985, for testifying before a legislative committee, or for requesting timely assistance under the employee assistance program." When those regulations are read as a whole, they authorized review of Game and Fish's decision to terminate Volesky in the context of an appeal of a reprisal claim.

■ [¶ 20] In order to establish a reprisal, an employee generally must show participation in protected activity, subsequent adverse employment action by the employer, and a causal connection between the two. *See Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993); *Couty v. Dole*, 886 F.2d 147, 148 (8th Cir.1989); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn.1983).

"2. An analysis of the level of demonstrated work performance....

"3. A review of the length of service of their employees....

"4. An analysis of the extent of required training needed to train a reassigned employee to full productivity in a different position...."

[¶ 21] Here, Game and Fish presented documentary evidence outlining its review of agency priorities by a management team consisting of all division chiefs. After considering all full-time equivalent positions and contract services with the needs of the agency, the management team decided to eliminate three full-time positions, including the Pilot II position, through a RIF. The management team decided the Pilot II position was not needed because pilot services could be obtained more economically and efficiently through private contracts. Game and Fish's elimination of the Pilot II position opened up a full-time equivalent for a position which was identified by the management team as having a higher priority to accomplish the agency's mission.

[¶ 22] The Board adopted the hearing officer's recommended findings:

"The alleged reprisal actions did not occur in a reasonably close time proximity to the alleged protected activity. Mr. Volesky's flying hours decreased in 1992–93, approximately two years after he reported alleged wrongdoings on the part of other Game and Fish employees to his supervisor, during the time period October–December 1990.... Mr. Volesky's position was terminated through reduction-in-force in April, 1994, almost three and a half years after he reported the alleged wrongdoings.

\* \* \* \* \* \*

"8. The reduction-in-force resulted from an extensive agency reorganization which involved several months of administrative review by a management team of agency priorities, staffing needs, and current positions, and which included consideration of all full-time equivalent positions and contract services in the Game and Fish Department. All department divisions were represented on the management team, and all had input into the position review and ultimate identification of the classifications to be reduced-in-force. The management team decided that it was necessary to eliminate three positions through reduction-in-force and determined the positions would come from the Pilot II, Biologist III, and Public Information Spe-

cialist III classifications. The management team decided that pilot services could be obtained more inexpensively and efficiently through private contracts and there was no need for a full-time pilot position. Reorganization and decisions pertaining to agency priorities and staffing needs are management functions.

"... Although the Game and Fish Department did not have a specific reduction-in-force policy, the agency had written procedures in place for elimination of positions prior to undertaking the reduction-in-force.... The written procedures had the same effect as a policy in determining the decisions of the agency pertaining to reduction-in-force. The written procedures provided that for single incumbent classifications, the position would be eliminated without evaluation or comparison to other staff. For multiple incumbent classifications, the procedures provided that a comparison would be made between incumbents within the classification to determine which individual(s) would be affected by reduction-in-force.

\* \* \* \* \* \*

"In this case, the decrease in flying hours occurred about two years after Mr. Volesky claims he reported alleged wrongdoings to his supervisor, and prior to submission of the anonymous packet to the Governor's Office. The reduction-in-force occurred almost three and a half years after Mr. Volesky claims reporting alleged wrongdoings.... [T]he imputed employer actions do not follow the protected activity closely in time and therefore do not justify an inference of retaliatory motive or establish a causal connection between the two."

[¶ 23] Although there was evidence which may have raised an inference that Game and Fish's elimination of Volesky's position was a reprisal, there was also documentary evidence establishing the RIF was the product of a bona fide managerial allocation of resources. Game and Fish's documentation of the RIF may not have been as extensive as Volesky would like, but it satisfactorily outlines the agency's managerial

considerations underlying the reallocation of resources and the RIF. We do not substitute our judgment for that of the Board, nor do we second guess Game and Fish's managerial prerogative to reallocate work to enhance the agency's operational efficiency. We conclude a reasoning mind could have reasonably decided the Board's findings were supported by the weight of the evidence. The Board's findings are therefore supported by a preponderance of the evidence. The Board's findings support its conclusion and decision the RIF was in accordance with the law and was not a reprisal.

[¶ 24] We affirm the judgment.

[¶ 25] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.

